IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

------------------------------------------------------------------------X     **Docket # 5:15-CV-451-BO**

HENRY LEE MCCOLLUM and GERALDINE BROWN
RANSOM, on behalf of and as legal guardian of
LEON BROWN,

                              Plaintiffs,

                    -versus-

ROBESON COUNTY, TOWN OF RED SPRINGS,          **FIRST AMENDED**
KENNETH SEALEY, both individually and in his   **COMPLAINT AND**
official capacity as the Sheriff of Robeson County,   **DEMAND FOR**
KENNETH SNEAD, JOEL GARTH LOCKLEAR,            <u>**JURY TRIAL**</u>
LARRY FLOYD, LEROY ALLEN, PAUL CANADY,
Administrator C.T.A. of the Estate of Luther Haggins,

                              Defendants.
------------------------------------------------------------------------X

  Plaintiffs, **HENRY LEE MCCOLLUM** and **GERALDINE BROWN RANSOM**, on

behalf of and as legal guardian of **LEON BROWN**, by and through undersigned counsel, and

complaining of the Defendants herein, state as follows:

<u>**INTRODUCTION**</u>

  1.  Plaintiffs **Henry Lee McCollum** and **Leon Brown** spent 30 years, 11 months, and 7

days in prison after being erroneously convicted and sentenced to death for the rape and murder of

11-year Sabrina Buie, crimes for which they were actually innocent.  DNA testing conducted years

after their convictions proved that not only were they actually innocent of raping and murdering

Sabrina Buie, but another individual who was identified as a possible suspect by the Defendants

was the actual perpetrator.

  2.  Plaintiffs' convictions and their loss of freedom for almost 31 years was caused by the

misconduct of the Defendants, who were the law enforcement agents assigned to the underlying

1

criminal case. These Defendants based their case on an informant that was objectively unreliable and untrustworthy, withheld exculpatory evidence from the prosecutor, the courts, and Plaintiffs' defense lawyers, and participated in the fabrication of inculpatory evidence that they knew, or reasonably should have known, was false. This included fabricating false confessions, and coercing 19-year old Plaintiff **Henry Lee McCollum** and 15-year old Plaintiff **Leon Brown**, both diagnosed as mentally retarded, to sign these false confessions. Those false confessions were the key pieces of evidence against both Plaintiffs, and were the reason they were convicted and sentenced to death for crimes they did not commit.

3. After approximately 62 combined years in North Carolina state prison, the majority of which were spent on Death Row awaiting execution for a crime they maintained they did not commit, Plaintiffs were released from prison when an unopposed motion for post-conviction relief was granted, and the charges against them dismissed. Both Plaintiffs were subsequently issued Pardons of Innocence from Governor Pat McCrory, declaring them actually innocent of the rape and murder of Sabrina Buie.

4. Plaintiffs bring this action against the Defendants seeking monetary damages pursuant to 42 U.S.C. § 1983, the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution for deprivation of Constitutional rights, including false arrest, deprivation of liberty without Due Process of Law, and malicious prosecution.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) 1367 and 42 U.S.C. § 1983.

2

6.  Venue in the Eastern District of North Carolina is proper pursuant to 28 U.S.C. § 1391, as Defendants reside within this District, and the events or omissions complained of herein took place within this District.

## PARTIES

7.  Plaintiffs **Henry McCollum, Geraldine Brown Ransom, and Leon Brown** are citizens and residents of Cumberland County, North Carolina.

8.  Plaintiff **Geraldine Brown Ransom** is the duly appointed legal guardian of **Leon Brown**, and as such, is authorized to bring suit on his behalf, pursuant to N.C.G.S. 35A-1241.

9.  Defendant **Robeson County** is a local county governmental unit in the State of North Carolina and has purchased liability insurance or is participating in a local government risk pool and has thereby waived its immunity from suit.

10.  Defendant **Robeson County** is alleged upon information and belief, responsible for the training and salaries of the Defendants **Kenneth Sealey** and **Joel Garth Locklear**.

11.  Defendant **Town of Red Springs** is a local county governmental unit within the State of North Carolina and Robeson County, and has purchased liability insurance or is participating in a local government risk pool and has thereby waived its immunity from suit.

12.  Defendant **Kenneth Sealey** is a citizen and resident of Robeson County, North Carolina, which is situated within the Eastern District of North Carolina, and is the current elected Sheriff of Robeson County, North Carolina.

13.  Defendant **Kenneth Sealey**, as Sheriff of Robeson County, has purchased liability insurance, is participating in a local government risk pool, or has purchased a sheriff's bond, and has thereby waived his immunity from suit.

3

14. Defendant **Kenneth Snead** is a citizen and resident of New Hanover County, North Carolina, which is situated within the Eastern District of North Carolina.

15. Defendant **Joel Garth Locklear** is a citizen and resident of Guilford County, North Carolina, which is situated within the Middle District of North Carolina.

16. Defendant **Larry Floyd** is a citizen and resident of Robeson County, North Carolina, which is situated within the Eastern District of North Carolina.

17. Defendant **Leroy Allen** is a citizen and resident of Gaston County, North Carolina, which is situated within the Western District of North Carolina.

17. Defendant **Paul Canady, C.T.A. of the Estate of Luther Haggins** (referred to herein as **Luther Haggins**) is the appointed administrator of the estate of the late **Luther Haggins**. At all times mentioned herein, **Luther Haggins** was a citizen and resident of Robeson County, North Carolina, which is situated within the Eastern District of North Carolina.

18. At all times mentioned herein, Defendant **Kenneth Sealey** was a deputy sheriff with the Robeson County Sheriff's Office.

19. At all times mentioned herein, Defendant **Kenneth Snead** was a law enforcement agent employed by the North Carolina State Bureau of Investigation, and worked on a joint task force with the Robeson County Sheriff and the Town of Red Springs Police Department.

20. At all times mentioned herein, Defendant **Joel Garth Locklear** was a deputy sheriff employed by Defendant **Robeson County.**

21. At all times mentioned herein, Defendant **Larry Floyd** was a police officer employed by the Red Springs Police Department, an agency of the Defendant **Town of Red Springs.**

4

22. At all times mentioned herein, Defendant **Leroy Allen** was a law enforcement agent employed by the North Carolina State Bureau of Investigation, and worked on a joint task force with the Robeson County Sheriff and the Town of Red Springs Police Department.

23. At all times mentioned herein, **Luther Haggins** was the Chief of Police of the Red Springs Police Department, an agency of the Defendant **Town of Red Springs,** and as such, was the elected or appointed local government official and/or agency head under whose jurisdiction and authority the acts complained of herein occurred.

## DEMAND FOR JURY TRIAL

24. Plaintiffs hereby demand trial by jury of all issues raised in this Complaint.

## STATEMENT OF FACTS

### A. *The Rape and Murder of Sabrina Buie and Preliminary Investigation*

25. On September 24, 1983, 11-year old Sabrina Buie of Red Springs, North Carolina, went missing. She was found the following day in a field next to a convenience store in Red Springs, naked from the waist down, wearing only a shirt and her bra pushed back over her head and behind her neck. Her underwear was found stuffed down her throat with a stick. Authorities determined that she had injuries to her vagina and anus, indicative of sexual assault, and died of suffocation as a result of the foreign objects blocking her airway. Injuries to her back indicated her body had been dragged across the field before its final resting place.

26. Several items were found near Sabrina Buie's body: a plywood board; a Schlitz beer can found inside a paper bag; a Newport brand cigarette butt; matches; a jar of Vaseline; and a gum wrapper. Nine latent fingerprints were lifted from the beer can, two of which were suitable for comparison and analysis.

27.  Among the first law enforcement agents to arrive at the scene were Defendant **Larry Floyd** of the Red Springs Police Department and Defendant **Leroy Allen** of the North Carolina State Bureau of Investigation.

28.  The crime scene was processed by numerous members of law enforcement, including Defendant **Leroy Allen**, who documented the crime scene in a sketch of where the items were found, personally recovered and vouchered pieces of physical evidence, and prepared a detailed crime scene report. In addition, he attended the autopsy of the body the following day, September 27, 1983, and continued to search the area, eventually locating Sabrina Buie's clothing on September 28, 1983 in the woods next to the field.

## B.  The Proximity of the Crime Scene to the Residence of Roscoe Artis

29.  The field where Sabrina Buie's body was found was situated next to a convenience store and the home of an individual named Roscoe Artis. At the time of Sabrina Buie's murder, Roscoe Artis had a criminal record dating back to 1957. His criminal history consisted almost exclusively of crimes against women involving physical and sexual violence where he acted alone.

30.  Artis' first conviction was in 1957 for assault on a female with intent to commit rape in Hoke County, North Carolina, as a result of which he was sentenced to twelve to fifteen years' imprisonment.

31.  Artis' second conviction was in 1967 while he was parole. Again, he was convicted for assaulting a young woman, first with a stick, and then by running her over with a car.

32.  In 1970, Artis was arrested and charged with assaulting two different women in Gaston County, North Carolina. On another unknown date in Mecklenburg County, North Carolina, Artis was involved in an incident with a woman he claimed was a prostitute. That incident involved the woman being cut with a knife.

6

33.  In 1974, Artis was convicted of assaulting a young 16-year-old girl with intent to commit rape in Gaston County. In that case, Artis grabbed the victim and tried to take her into the woods. When she resisted, he beat her and choked her, threatened to kill her, and only stopped when a witness intervened and stopped the assault.

34.  In 1975, Artis was convicted of assault with a weapon. Further details on that matter are currently unknown.

35.  On August 25, 1980, Bernice Moss was found dead in Gastonia, North Carolina. Her body was nude from the waist down, her shirt and her bra were all that she was wearing. Evidence showed that she had been beaten with a stick and an object stuffed down her throat. Artis was the last person seen with Bernice Moss before she died. He was considered a suspect, questioned by authorities, but not charged at that time.

36.  After Bernice Moss' murder, Artis fled to Red Springs, North Carolina, where he lived with his sister next to the field where Sabrina Buie was found.

37.  In 1981, a young woman reported to the Gastonia Police that Artis had assaulted her with a brick. As a result, an arrest warrant was issued but no further information is available on the resolution of that case.

### C. The Initial Investigation of Lewis "L.P." Sinclair, Jr.

38.  Lewis "L.P." Sinclair, Jr., a 16-year old student at Red Springs High School, was interviewed on Monday, September 26, 1983 by Defendant **Joel Garth Locklear** of the Robeson County Sheriff's Office in connection with the Sabrina Buie matter.

39.  In that initial interview, L.P. Sinclair, Jr. stated that on September 24, 1983 he was with Plaintiff **Henry Lee McCollum** at Plaintiff's home at 11:35 p.m. that night.

40. Defendant **Joel Garth Locklear** interviewed L.P. Sinclair, Jr. again on October 5, 1983. This time, Sinclair changed his story and allegedly told Defendant **Joel Garth Locklear** that when he was questioned on September 26, 1983, he "mistakenly" related his activities of September 23, 1983 for September 24, 1983.

41. In yet another interview with Defendant **Joel Garth Locklear**, L.P. Sinclair, Jr. allegedly told Defendant **Joel Garth Locklear** that on September 24, 1983, he was at a party at an unknown residence with Plaintiff **Henry Lee McCollum**, Plaintiff **Leon Brown**, Darryl Suber, and Chris Brown.

42. In another interview of L.P. Sinclair, Jr. on October 5, 1983, conducted by Defendant **Larry Floyd**, Sinclair told police he had made up his first story about being at a party with Plaintiff **Henry Lee McCollum**, Plaintiff **Leon Brown**, Darryl Suber, and Chris Brown on September 24, 1983. Sinclair now changed his story to state that on September 24, 1983, he went to Plaintiff **Leon Brown's** home, picked him up, and met up with another youth before going to a friend's house at approximately 8:00 p.m. He told police that Plaintiff **Leon Brown** left the house alone between 8:00 and 9:00 p.m. that evening.

43. The following day, October 6, 1983, L.P. Sinclair, Jr. was administered a polygraph examination by police. The results of that examination dictated that L.P. Sinclair was truthful in his statements that he did not known anything about the death of Sabrina Buie.

D. *The Questioning and Arrest of Henry Lee McCollum and Leon Brown*

44. On September 27, 1983, Plaintiff **Henry Lee McCollum** was questioned by Defendant **Joel Garth Locklear** of the Robeson County Sheriff's Office regarding Sabrina Buie. Plaintiff **Henry Lee McCollum** denied any involvement in her death and he was released. Defendant **Joel Garth Locklear** memorialized this interrogation in a written report.

8

45.  On September 28, 1983, at approximately 6:20 p.m., Defendant **Joel Garth Locklear** and Defendant **Kenneth Sealey**, a detective employed by the Red Springs Police Department spoke with seventeen-year old Ethel Furmage, a high school student, regarding Sabrina Buie's death. She told Defendant **Joel Garth Locklear** and Defendant **Kenneth Sealey** that she had heard from other kids at school that both Plaintiffs, along with two others she identified as David Murray and Chris Brown, were involved in Sabrina Buie's death. She gave no details or sources of this information, nor did she have any personal knowledge that either **Henry Lee McCollum** or **Leon Brown** were involved in Sabrina Buie's death in any way.

46.  Based upon this tip, Defendant **Leroy Allen**, Defendant **Kenneth Snead**, and Defendant **Kenneth Sealey** of the Red Springs Police Department went to Plaintiff **Henry Lee McCollum**'s home at approximately 9:10 p.m. on September 28, 1983, took him into custody, and transported him to the Red Springs Police Department headquarters to be interrogated. At headquarters, he was fingerprinted and placed in an interrogation room.

47.  Plaintiff **Henry Lee McCollum**, 19 years old at the time and mentally retarded, was interrogated by law enforcement agents continuously for several hours, not permitted to see his mother or make any phone calls. The interrogating officers were the same law enforcement agents who had processed the crime scene and thus possessed knowledge of the details of the crime scene and the condition of the victim's body.

48.  Over the course of more than four and one-half hours, law enforcement agents, including Defendant **Leroy Allen**, Defendant **Kenneth Snead** and Defendant **Kenneth Sealey** repeatedly accused Plaintiff **Henry Lee McCollum** of participating in the rape and murder of Sabrina Buie, verbally threatening him when he proclaimed his innocence. At no time was Plaintiff **Henry Lee McCollum** read his <u>Miranda</u> rights during his hours-long interrogation, or permitted

9

to speak with an attorney or remain silent. Whenever he tried to remain silent, he was verbally and physically threatened by Defendant **Kenneth Snead** and Defendant **Kenneth Sealey.**

49. While Plaintiff **Henry Lee McCollum** was being held in the interrogation room, his mother arrived at the police station with her daughter and 15-year old mentally retarded Plaintiff **Leon Brown** to find out what was happening. Defendant **Kenneth Snead** and Defendant **Kenneth Sealey** then interrogated each of them individually, threatening them with arrest and prosecution as well, and relayed these threats to Plaintiff **Henry Lee McCollum**. Additionally, law enforcement agents repeatedly told Plaintiff **Henry Lee McCollum** that other eyewitnesses had placed him at the scene of the crime and otherwise implicated him in Sabrina Buie's sexual assault and death, and further told him forensic evidence existed implicating him as well.

50. These were lies. In fact, no physical evidence or independent witnesses existed linking either Plaintiff to the scene of the crime or to the crime itself and no evidence existed that implicated either Plaintiffs **Henry Lee McCollum** and **Leon Brown's** mother or sister in the commission of the crimes. In fact, at the time they were questioned, both Plaintiffs **Henry Lee McCollum** and **Leon Brown** were conclusively eliminated as the sources of identifiable fingerprint evidence found at the crime scene where Sabrina Buie's body was found.

51. Before they commenced their interrogation of Plaintiff **Henry Lee McCollum**, Defendant **Leroy Allen**, Defendant **Kenneth Snead** and Defendant **Kenneth Sealey** had personal knowledge of what physical evidence existed, where the evidence was found at the crime scene, and the condition of the evidence.

52. Defendant **Leroy Allen**, Defendant **Kenneth Snead** and Defendant **Kenneth Sealey** imparted this knowledge upon Plaintiff **Henry Lee McCollum** during the interrogation.

53. Defendant **Leroy Allen,** Defendant **Kenneth Snead** and Defendant **Kenneth Sealey** further expressed the view that Plaintiff **Henry Lee McCollum** had not acted alone when accusing him of raping and murdering Sabrina Buie, specifically questioning Plaintiff **Henry Lee McCollum** about his younger brother, Plaintiff **Leon Brown**. Defendant **Kenneth Snead** and Defendant **Kenneth Sealey** repeatedly promised Plaintiff **Henry Lee McCollum** that if he implicated his co-perpetrators, they and the court system would be lenient with him.

54. Defendant **Leroy Allen**, Defendant **Kenneth Snead** and Defendant **Kenneth Sealey** promised Plaintiff **Henry Lee McCollum** that if he simply admitted he played a minor role in the offense, such as restraining the victim, they and the court system would be lenient with him.

55. At 1:37 a.m. on September 29, 1983, Plaintiff **Henry Lee McCollum** signed two statements written by Defendant **Kenneth Snead** and Defendant **Kenneth Sealey**. These statements contained the details of the crime scene, the condition of evidence, the condition of the victim's body, and implicated Plaintiff **Leon Brown**, Chris Brown, Darryl Suber, and Louis Moore. In his statement, Plaintiff **Henry Lee McCollum** allegedly told police that he had simply held the victim down while the others had raped and murdered her, and told police that Darryl Suber had brought a knife to the scene and had stabbed Sabrina Buie, and that Darryl Suber had smoked the Newport cigarette found at the scene of the crime. McCollum also allegedly told police that the victim's underwear was pink. His statement to police did not mention the name Roscoe Artis.

56. In fact, Sabrina Buie had not been stabbed. The autopsy of Sabrina Buie revealed no wounds consistent with stabbing.

57. In fact, the victim's underwear was white; when they were found, they were stained with blood giving them a pink appearance.

11

58. Defendant **Kenneth Snead** and Defendant **Kenneth Sealey**, now joined by Defendant **Joel Garth Locklear**, and Red Springs Police Department Chief **Luther Haggins** then took 15-year old mentally retarded Plaintiff **Leon Brown** into custody at the Red Springs Police Department.

59. The same law enforcement agents then subjected 15-year old Plaintiff **Leon Brown** to continuous interrogation for over an hour, denying him access to his mother and an attorney. Plaintiff **Leon Brown**, like Plaintiff **Henry Lee McCollum**, was verbally threatened and told that if he did not confess, his mother and his sister would also go to jail. Like Plaintiff **Henry Lee McCollum**, law enforcement lied to Plaintiff **Leon Brown** by telling him witnesses and evidence existed implicated him in Sabrina Buie's rape and murder. Plaintiff **Leon Brown** likewise signed a written confession admitting to his involvement in the crimes. His statement to police likewise did not mention Roscoe Artis.

60. Neither the law enforcement agents who investigated Sabrina Buie's death nor the Robeson County District Attorney ever charged Chris Brown, Darryl Suber, or Louis Moore with any crimes.

61. On September 29, 1983, the same law enforcement agents interviewed Darryl Suber, who submitted to a polygraph test. Suber told police he was in Maxton, North Carolina on the night of the murder in the company of others, and also expressed the view that McCollum and Brown were innocent. Suber told police that he only drank Budweiser beer, and only smoked Salem Lights brand cigarettes. His alibi was corroborated by several others to the same police officers.

62. In fact, Louis Moore had moved from Red Springs, North Carolina to Kentucky with his grandmother in June, 1983, approximately three months prior to Sabrina Buie's murder, and

had not returned to North Carolina since moving. Defendants conclusively established his presence in Kentucky on the date of the murder.

63. On the contrary, law enforcement ruled out Chris Brown, Darryl Suber, and Louis Moore as having any participation in the rape and murder of Sabrina Buie. None of their fingerprints matched any fingerprints found at the scene, nor did any other witness place them at the scene of the murder or otherwise implicate them in the crimes against Sabrina Buie.

64. Plaintiffs **Henry McCollum and Leon Brown** were charged with rape, murder, and related offenses by the Robeson County District Attorney, and were held in custody pending trial.

### E. The Identification of Roscoe Artis as a Suspect in the Death of Sabrina Buie By the Red Springs Police Department

65. Approximately one month after Plaintiffs **Henry McCollum and Leon Brown** were arrested, charged with Sabrina Buie's rape and murder, and held in the Robeson County Jail on those charges pending trial, on October 22, 1983, eighteen-year old Joann Brockman was found dead behind a barn in Red Springs, North Carolina.

66. Joann Brockman's body was naked from the waist down and found with her shirt and bra pulled over her head. She had been beaten with a stick, her body dragged, and evidence showed she had been sexually assaulted. The cause of death was manual strangulation.

67. Witnesses told law enforcement that Ms. Brockman had been seen in the presence of Roscoe Artis just before she went missing.

68. The same day, Roscoe Artis was arrested by Defendant **Joel Garth Locklear** of the Robeson County Sheriff's Office. When Artis was arrested, police noticed blood on his clothing that was later determined to be Joann Brockman's blood. Artis gave three statements to police; two of those statements were confessions whereby he admitted to murdering and sexually assaulting Joann Brockman.

13

69.  Roscoe Artis was charged with rape and murder, and detained in the Robeson County Jail awaiting trial on those charges related to Joann Brockman's murder, the same jail where Plaintiff **Henry Lee McCollum** and Plaintiff **Leon Brown** were held.

70.  On October 2, 1984, one week before the trial of <u>State of North Carolina v. Henry Lee McCollum and Leon Brown</u> commenced, an arrest warrant was issued for Roscoe Artis charging him with first-degree murder of Bernice Moss. The charges remained pending until 1990, when the case was dismissed by the District Attorney.

71.  Three days later, on or about October 5, 1984, **Luther Haggins**, Defendant **Kenneth Snead**, and Defendant **Larry Floyd** requested the State Bureau of Investigation to conduct comparisons of the latent prints found at the crime scene to known fingerprints of Roscoe Artis and an individual known as L.P. Sinclair. Both Artis and Sinclair were listed as "suspects" by the Red Springs Police Department and the three named defendants above on the fingerprint request form.

72.  The fingerprint comparison for Artis and Sinclair was never completed. One year later, on October 5, 1985, after the trial of <u>State of North Carolina v. Henry Lee McCollum and Leon Brown</u> ended in a guilty verdict and sentences of death for both McCollum and Brown, the Red Springs Police Department, through the individual Defendants named above, cancelled the request.

*F.  The Withholding of Exculpatory Evidence*

73.  Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** intentionally withheld information and the fact that Louis Moore was in Kentucky at the time of the murder, and that police had verified his alibi, by failing and/or refusing to provide the same to the Robeson County District Attorney, the Robeson County Superior Court, and Plaintiffs' defense lawyers, either prior to or during trial.

14

74. Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** intentionally withheld information and the fact that Ethel Furmage had no personal knowledge as to Plaintiffs' involvement in Sabrina Buie's rape and murder from Plaintiffs' defense attorneys prior to trial and during their trial.

75. Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** intentionally withheld information and the fact that fact that on October 5, 1984, three days before the start of Plaintiffs' trial, the Red Springs Police Department submitted a request to the North Carolina State Bureau of Investigation for fingerprint comparisons.

76. Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** intentionally withheld information and the fact that both Plaintiff **Henry Lee McCollum** and Plaintiff **Leon Brown** were coerced into signing false confessions by the aforementioned named Defendants.

### G. The First Trial of McCollum and Brown and Subsequent Appeals

77. Plaintiffs **Henry McCollum and Leon Brown** were tried separately in the Robeson County Superior Court with rape and capital murder. At trial, the State's theory was that five males, identified as Plaintiff **Henry Lee McCollum**, Plaintiff **Leon Brown**, Chris Brown, Darryl Suber, and Louis Moore had lured the victim to a field. Once in the field, one of the males smoked a cigarette, and all of the males participated in the rape and murder of Sabrina Buie by stuffing her underwear down her throat, suffocating her. According to the State's theory, her body was dragged across the field where it was later found.

78. At Plaintiffs' **Henry McCollum and Leon Brown** first trial, L.P. Sinclair, Jr. testified as a witness for the State, and stated that he had overheard Plaintiffs and others planning to rape

Case 5:15-cv-00451-BO   Document 70   Filed 03/24/16   Page 15 of 39

and murder Sabrina Buie, and that later Plaintiff **Henry McCollum** later described the details of the murder and his involvement to Sinclair.

79.  Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** coerced L.P. Sinclair, Jr. into testifying falsely against Plaintiffs, despite his prior statements to Defendants that he knew nothing about the rape and murder of Sabrina Buie.

80.  At trial, Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** testified as witnesses for the State. The evidence against Plaintiffs **Henry McCollum and Leon Brown** consisted chiefly of their confessions made to Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins.**

81.  Plaintiffs **Henry McCollum and Leon Brown** were convicted of first-degree rape and first-degree murder on October 25, 1984, and sentence to death. They timely appealed their convictions and sentences.

82.  On February 3, 1988, the North Carolina Supreme Court reversed their convictions and sentences in State v. McCollum, 321 N.C. 557, 364 S.E.2d 112 (1988), and ordered new trials as to both **Henry McCollum and Leon Brown.**

*H.  The Conviction of Roscoe Artis for the Rape and Murder of Joann Brockman*

83.  On August 31, 1984, Roscoe Artis was convicted in the Robeson County Superior Court for the rape and murder of Joann Brockman, and was sentenced to death. The sentence was later commuted to life imprisonment without parole.

84.  Roscoe Artis remains incarcerated pursuant to that judgment of conviction.

*I.  The Second Trial of McCollum and Brown and Subsequent Appeals*

16

85. Plaintiff **Henry Lee McCollum** was retried separately in 1991 in the Cumberland County Superior Court. Again, he was found guilty of first-degree murder and first-degree rape on November 22, 1991, and was sentenced to death. The North Carolina Supreme Court affirmed the conviction and sentence in State v. McCollum, 334 N.C. 208, 433 S.E.2d 144 (1993), and the United States Supreme Court denied certiorari in McCollum v. North Carolina, 512 U.S. 1254 (1994), with Justice Harry Blackmun writing a dissent.

86. Plaintiff **Leon Brown** was re-tried in 1992 in the Bladen County Superior Court, and found guilty of first-degree rape on June 10, 1992, and sentenced to life imprisonment without parole. His conviction and sentence were affirmed by both the North Carolina Court of Appeals and the North Carolina Supreme Court in State v. Brown, 112 N.C.App. 390, 436 S.E.2d 163 (N.C.App. 1993) and State v. Brown, 339 N.C. 606, 453 S.E.2d 165 (1995), respectively.

87. Prior to Plaintiff **Henry McCollum and Leon Brown's** second trials, L.P. Sinclair, Jr. was murdered. As a result, he did not testify; however, his prior testimony was admitted into evidence against both Plaintiffs at their retrials.

*J. Conditions of Incarceration*

88. After **Henry McCollum and Leon Brown** were convicted, they were sent to Death Row to await execution. Plaintiff **Leon Brown**, 15 years of age at the time he was convicted, was initially placed in solitary confinement on Death Row, segregated from the adult male population for his safety. This decision was later revisited, and Plaintiff **Leon Brown** was released into the adult population.

89. While on Death Row, both Plaintiffs were befriended by Roscoe Artis, who was older and fostered an older-brother relationship with Plaintiffs. This friendship continued for years. All the while, Artis repeatedly assured Plaintiffs that he knew that they were innocent of the Sabrina

Buie case, never revealing his true role in her murder. When revealed in 2014, both **Henry McCollum and Leon Brown** found it extremely difficult to accept that Roscoe Artis was responsible for the murder of Sabrina Buie when he had seen them face to face daily for decades, all the while maintaining a friendship based upon fraud.

90. While on Death Row, both men developed friendships and bonds with other inmates in the same predicament. Over the 31 years of incarceration, **Henry McCollum and Leon Brown** watched their friends leave their cells for the last time on the way to their executions. They lost over 40 friends during their incarceration to execution, each wondering when their turn to be executed would come.

91. Both **Henry McCollum and Leon Brown** were picked on and bullied by both other inmates and staff as a result of their intellectual disabilities, with both men having to defend themselves from attacks over the years. Plaintiff **Leon Brown** was repeatedly the victim of sexual assault from other inmates, violently raped and brutalized as he was younger and weaker both mentally and physically.

92. Plaintiff **Leon Brown** developed severe and permanent mental illness as a result of his incarceration, diagnosed with Schizoaffective Disorder, Bipolar Type, Borderline Intellectual Functioning, and developed diabetes and hypertension. Plaintiff **Henry Lee McCollum** has developed diabetes and suffers psychological injuries as well, with symptoms commonly associated with Post-Traumatic Stress Disorder.

*K. The Motion for Appropriate Relief and*
*Investigation by the North Carolina Innocence Inquiry Commission*

93. Both **Henry McCollum and Leon Brown** filed Motions for Appropriate Relief, seeking post-conviction relief and collaterally attacking their convictions.

18

94. While his motion was pending, Plaintiff **Leon Brown** wrote a letter to the North Carolina Innocence Inquiry Commission requesting review of his case in 2009. The Commission opened up a file and commenced an investigation into the case.

95. In June, 2010, the Commission obtained a court order directing the Red Springs Police Department to provide the Commission with the evidence and original reports from the case file, which was served upon the department. On November 12, 2010, Investigator Sharon Stellato of the Commission spoke with Captain Kevin Locklear from the Red Springs Police Department, who informed her that his department had no physical evidence, files or reports in the case at all. He claimed that the Department's entire file had been turned over to the State Bureau of Investigation in 1983. He reiterated the same in a faxed letter to the Commission the next day, November 13, 2010.

96. Investigator Stellato continued to request information from the Red Springs Police Department, but received no response. She visited the Police Department in person, and spoke with Captain Locklear directly, informing him that state records indicated that the files were, in fact, maintained by the Red Springs Police Department. Captain Locklear agreed to search again, and this time located a box of the files and the original evidence, which was provided in 2014.

97. The box located by Captain Locklear contained the forensic evidence, including latent prints, hair samples, swabs, the cigarette butt, the beer can, and the other pieces of physical evidence, as well as original reports and crime scene photographs.

98. The cigarette butt was tested again by the North Carolina State Crime Laboratory and a DNA profile was developed from the butt.

99.  Darryl Suber voluntarily provided the Innocence Inquiry Commission with a DNA sample on February 19, 2014, which was compared to the DNA sample found on the cigarette butt. He was conclusively excluded as the source of the DNA from the cigarette butt.

100.  Both Plaintiff **Henry Lee McCollum** and Plaintiff **Leon Brown**'s DNA profiles were analyzed and compared to the DNA profile on the cigarette butt. Both of them were conclusively excluded as the source of the DNA from the cigarette butt.

101.  Roscoe Artis' DNA profile was in the North Carolina Combined DNA Index System (CODIS) database by virtue of his conviction for the rape and murder of Joann Brockman. An initial comparison of his DNA on file in the CODIS database to the DNA profile from the cigarette butt indicated a high probability that Roscoe Artis was the source of the DNA from the cigarette butt.

102.  Investigator Sharon Stellato interviewed Roscoe Artis on four occasions regarding the Sabrina Buie murder. The first interview occurred in March, 2011. During that interview, Artis told investigators from the Commission that he recalled the Sabrina Buie murder, and that the police had taken seven boys in for questioning, and that two boys he knew as Henry and Leon had been charged, but he knew that those two boys were innocent. He claimed to know nothing about the murder, only that the two boys were innocent.

103.  Artis was interviewed a second time by investigators from the commission on July 11, 2014. This time, Artis claimed that he did not know Sabrina Buie, but he had seen her around town at times, getting into cars. He claimed he did not know the day that Sabrina Buie had been murdered. When confronted with the fact that his DNA on file in the State's database matched DNA recovered from the crime scene from an unspecified item, he told investigators that he did know Sabrina Buie, and that she had visited his sister's house once or twice and had gone to the

20

store to buy cigarettes for him. He claimed he never had any contact with Sabrina Buie except in his sister's driveway, and claimed his DNA must have been planted at the crime scene.

104.  On July 31, 2014, Investigator Sharon Stellato interviewed Roscoe Artis for the third time regarding the Sabrina Buie case. Artis now admitted that on the night she went missing, Sabrina Buie had come over to his sister's home, and that it was raining out. He claimed to give Sabrina Buie a hat and coat to wear when she left. He acknowledged that he had failed to tell investigators this fact in his two previous interviews. Artis further told Investigator Stellato that he did not work on weekends like he previously had claimed.

105.  Artis further claimed that Sabrina Buie left his sister's home on a bicycle, now claiming that she rode off in the direction of a store, not in the direction of her home. He also said in this interview that on the day prior to her disappearance, he had seen Sabrina Buie get into a white truck. When confronted with these inconsistencies by Investigator Shellato, he denied making any prior inconsistent statements, even when reminded that all of his interviews had been recorded.

106.  At this third interview, Roscoe Artis voluntarily provided a sample of his DNA to the Commission investigators.

107.  After this third interview, Artis wrote the Innocence Inquiry Commission on August 15, 2014, and asked the investigators to come back and visit him again. In that letter he reiterated that it was raining on the night of Sabrina Buie's disappearance.

108.  On August 22, 2014, Roscoe Artis was interviewed again by investigators from the Innocence Inquiry Commission. Again, Artis claimed that on the night of Sabrina Buie's disappearance, it was raining. He repeated his previous statements about giving Sabrina Buie a hat and coat, but was unable to provide the color or type of the hat and coat. Artis claimed that he was

never aware of the hat and coat until only recently when he spoke with his niece on the telephone and she had "reminded" him that the niece had given Sabrina Buie the hat and coat. When confronted with his prior inconsistent statement that his sister, not his niece, had allegedly given Sabrina Buie the hat and coat, he again claimed that it was his niece, and that she would corroborate his statements.

109. Artis was then confronted with the fact that the Innocence Inquiry Commission had already interviewed his family members, who had actually contradicted his statements. Artis then claimed that his family members had faulty memory.

110. During the August 22, 2014 interview, Artis volunteered "Why would I get out of bed at two or three in the morning in the rain, go to her, find that little girl and do this to her and then come back to bed?" At no time was he ever told the time of Sabrina Buie's death.

111. Artis also told the Innocence Inquiry Commission that if the police had done their job correctly, Plaintiffs would never have been sent to prison.

112. The Innocence Inquiry Commission established that there was no precipitation on the night of September 24, 1983, contrary to Roscoe Artis' claims. In addition, recorded interviews with Artis' family members contradicted his claims to investigators.

113. A sample of Artis' DNA that he voluntarily provided in July, 2014 was sent to the North Carolina State Crime Laboratory for DNA analysis and comparison to the DNA profile generated from the cigarette butt. The results were as follows: the probability of someone other than Roscoe Artis with a DNA profile consistent with the DNA profile obtained from the cigarette butt was approximately 1 in 25 billion in the North Carolina Caucasian population, 1 in 1.84 billion in the North Carolina black population, 1 in 12.6 billion in the North Carolina Lumbee Indian population, and 1 in 89.9 billion in the North Carolina Hispanic population; the probability of

22

someone other than Roscoe Artis with a DNA profile consistent with the DNA profile obtained from the cigarette butt was 1 in 4.2 trillion for the African-American population.

*L.  The Hearing Upon the Motion for Appropriate Relief and*
*Order of the Court Granting the Motion and Vacating McCollum and Brown's Convictions*

114.  On September 2, 2014, a hearing upon the Motion for Appropriate Relief for both **Henry McCollum and Leon Brown** was held in the Robeson County Superior Court, the Honorable Douglas B. Sasser presiding. Investigator Sharon Stellato testified as a witness at the hearing. Without opposition from the District Attorney, the Court granted the Motions for Appropriate Relief and vacated the convictions and sentences. District Attorney L.J. Britt, III then moved to dismiss the cases against both men, and the court ordered their immediately release from custody.

115.  Plaintiffs **Henry McCollum and Leon Brown** were released from the Department of Adult Corrections the following day, September 3, 2014.

*M.  The Pardons of Innocence Issued by Governor Pat McCrory on June 5, 2015*

116.  Following their release, Plaintiffs **Henry McCollum and Leon Brown** applied to the Governor for Pardons of Innocence.

117.  On June 5, 2015, Governor Pat McCrory issued both Plaintiffs **Henry McCollum and Leon Brown** Pardons of Innocence.

*N.  Damages*

118.  As a result of the actions of the individual Defendants named above, Plaintiffs **Henry McCollum and Leon Brown** were deprived of their liberty and freedom from September 28, 1983 until their release on September 3, 2014, a total of 30 years, 11 months, and 7 days in prison for a crime they did not commit. A substantial portion of that time was spent on Death Row awaiting

execution, watching people they had developed close relationships with being led to their deaths on numerous occasions.

119.  As a result of their wrongful incarceration, Plaintiffs **Henry McCollum and Leon Brown** suffered embarrassment, mental anguish, humiliation, severe psychological stress, and psychological injuries, as well as damage to their physical health.

120.  As a result of their wrongful incarceration, Plaintiffs **Henry McCollum and Leon Brown** have suffered loss of life opportunities, such as the company of friends and family, the ability to marry and have children, the ability to pursue education and employment, and the ability to experience and enjoy life.

121.  In addition, Plaintiffs **Henry McCollum and Leon Brown's** mother died several years prior to their release, going to her grave without ever having seen her sons exonerated for a crime she knew they did not commit. Plaintiffs **Henry McCollum and Leon Brown** were unable to attend her funeral or visit her grave.

## FIRST CAUSE OF ACTION

**FALSE ARREST PURSUANT TO 42 U.S.C. § 1983
(AGAINST DEFENDANTS SHERIFF KENNETH SEALEY,
KENNETH SNEAD, JOEL GARTH LOCKLEAR,
PAUL CANADY, ADMINISTRATOR C.T.A.
OF THE ESTATE OF LUTHER HAGGINS)**

122.  Plaintiffs repeat, reiterate and reallege each and every allegation contained in Paragraphs # 1-121 with the same force and effect as if fully set forth herein.

123.  At all times mentioned herein, Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** acted under the color of law as law enforcement agents of the Robeson County Sheriff and the Town of Red Springs, and with the authority of the Robeson County Sheriff and the Town of Red Springs.

24

124. On September 28, 1983, Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** placed Plaintiff **Henry Lee McCollum** under arrest without any probable cause that Plaintiff **Henry Lee McCollum** had committed a criminal offense.

125. On September 28, 1983, Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** placed Plaintiff **Leon Brown** under arrest without any probable cause that Plaintiff **Leon Brown** had committed a criminal offense.

126. Because the Plaintiffs' arrests and convictions were obtained through fraud, perjury, coercion, the willful failure or refusal to investigate exculpatory evidence, and the willful failure or refusal to disclose exculpatory evidence to the prosecutor and the North Carolina courts, there was no probable cause to arrest, prosecute, and convict Plaintiffs.

127. Because the Plaintiffs' arrests and convictions were obtained through fraud, perjury, coercion, the willful failure or refusal to investigate exculpatory evidence, and the willful failure or refusal to disclose exculpatory evidence to the prosecutor and the North Carolina courts, any probable cause that may have arguably existed at the time of the arrest was vitiated by the time of indictment, trial, and conviction.

128. As a result of the aforesaid conduct by Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins**, each acting in concert with and aiding each other, Plaintiff **Henry Lee McCollum** was subjected to an illegal, improper and false arrest by the aforementioned Defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege or consent.

129. As a result of the aforesaid conduct by Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins**, each acting in concert

Case 5:15-cv-00451-BO   Document 70   Filed 03/24/16   Page 25 of 39

with and aiding each other, Plaintiff **Leon Brown** was subjected to an illegal, improper and false arrest by the aforementioned Defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege or consent.

130.  As a result of the foregoing, Plaintiff **Henry Lee McCollum**'s liberty was restricted for an extended period of time, was put in fear for his safety, and he was humiliated, without probable cause.

131.  As a result of the foregoing, Plaintiff **Leon Brown**'s liberty was restricted for an extended period of time, was put in fear for his safety, and he was humiliated, without probable cause.

132.  The deprivation of Plaintiffs' liberty as a result of the aforesaid conduct by Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** continued from September 28, 1983 until their release on September 3, 2014.

133.  As a direct and proximate result of the aforesaid conduct by Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins,** Plaintiffs have suffered damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

**DEPRIVATION OF DUE PROCESS OF LAW PURSUANT TO 42 U.S.C. § 1983
(AGAINST DEFENDANTS SHERIFF KENNETH SEALEY,
KENNETH SNEAD, JOEL GARTH LOCKLEAR,
PAUL CANADY, ADMINISTRATOR C.T.A.
OF THE ESTATE OF LUTHER HAGGINS)**

134.  Plaintiffs repeat, reiterate and reallege each and every allegation contained in Paragraphs # 1-121 with the same force and effect as if fully set forth herein.

135.  Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins,** acting in concert with each other, and each aiding and abetting

each other, and acting pursuant to a common plan or scheme, deprived Plaintiffs of their

Constitutional right to Due Process of Law and a fair trial by the following acts, inter alia:

(a) intentionally and deliberately concealing and failing to disclose exculpatory evidence from Plaintiffs' defense attorneys, the Robeson County District Attorney, the Robeson County Superior Court, the Bladen County Superior Court, and the Cumberland County Superior Court that inculpated Roscoe Artis in the rape and murder of Sabrina Buie;

(b) inducing, suborning, coercing, causing, and allowing the fabrication of false incriminating statements of L.P. Sinclair, Jr.
(c) inducing, suborning, coercing, causing, and allowing the false incriminating trial testimony of L.P. Sinclair, Jr.;

(d) intentionally and deliberately concealing evidence from Plaintiffs' defense attorneys, the Robeson County District Attorney, the Robeson County Superior Court, the Bladen County Superior Court, and the Cumberland County Superior Court that Ethel Furmage possessed no direct information inculpating Plaintiffs in the rape and murder of Sabrina Buie;

(e) giving perjurious testimony at pre-trial hearings and at trial regarding the circumstances under which Plaintiffs gave incriminating statements to Defendants during their interrogation;

(f) failing to disclose to Plaintiffs' defense attorneys, the Robeson County District Attorney, the Robeson County Superior Court, the Bladen County Superior Court, and the Cumberland County Superior Court that Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** fabricated evidence inculpating Plaintiffs;

(g) failing to investigate, obtain, and/or follow up on exculpatory evidence of which Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** knew or should have known, including but not limited to the evidence connecting Roscoe Artis to the rape and murder of Sabrina Buie.

136. In effecting each of the above-referenced deprivations, Defendants **Kenneth Sealey,**

**Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** acted

under color of North Carolina state law.

27

137.  In effecting each of the above-referenced deprivations, Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** acted pursuant to a pursuant to a common plan, scheme, and conspiracy to deprive Plaintiffs of their civil rights.

138.  No reasonable law enforcement officer would have engaged in the conduct described in Paragraph # 135(a)-(g) above.

139.  Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** knew, or reasonably should have known that the conduct described in Paragraph # 135(a)-(g) above was improper.

140.  Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** knew, or reasonably should have known that the conduct described in Paragraph # 135(a)-(g) above violated Plaintiffs' Constitutional rights to Due Process of Law and a fair trial.

141.  Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** knew, or reasonably should have known that the conduct described in Paragraph # 135(a)-(g) above was likely to lead to Plaintiffs' convictions for first-degree rape and first-degree murder, despite their actual innocence.

142.  Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** knew, or reasonably should have known that the conduct described in Paragraph # 135(a)-(g) above was likely to lead to Plaintiffs' sentences of life imprisonment without parole and death, despite their actual innocence.

143.  The conduct of Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** described in Paragraph # 135(a)-(g) above

28

contributed to and actually caused Plaintiffs' convictions for first-degree rape and first-degree murder, and subsequent sentences of life imprisonment without parole and death.

144. Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** committed the foregoing acts and omissions in violation of clearly established law of which any reasonable law enforcement officer would have or should have known.

145. In effecting each of the above-referenced deprivations, Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** acted deliberately, intentionally, in bad-faith, and/or with reckless disregard for the rights and safety of Plaintiffs.

146. Because the Plaintiffs' arrests and convictions were obtained through fraud, perjury, coercion, the willful failure or refusal to investigate exculpatory evidence, and the willful failure or refusal to disclose exculpatory evidence to the prosecutor and the North Carolina courts, there was no probable cause to arrest, prosecute, and convict Plaintiffs.

147. Because the Plaintiffs' arrests and convictions were obtained through fraud, perjury, coercion, the willful failure or refusal to investigate exculpatory evidence, and the willful failure or refusal to disclose exculpatory evidence to the prosecutor and the North Carolina courts, any probable cause that may have arguably existed at the time of the arrest was vitiated by the time of indictment, trial, and conviction.

148. Because the Plaintiffs' arrests and convictions were obtained through fraud, perjury, coercion, the willful failure or refusal to investigate exculpatory evidence, and the willful failure or refusal to disclose exculpatory evidence to the prosecutor and the North Carolina courts, no

presumption of regularity attaches to any act of the Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins.**

149. As a direct and proximate result of Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins'** deliberate, reckless, deliberately indifferent, and/or bad-faith acts and omissions, Plaintiffs were deprived of their Constitutional rights to a fair trial and to not be deprived of their of liberty without Due Process of Law, were wrongfully convicted, and served approximately thirty-one (31) years of wrongful imprisonment, as well as all of the physical, emotional and pecuniary injuries set forth above.

150. As a direct and proximate result of Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins'** conduct, Plaintiffs have suffered damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### MALICIOUS PROSECUTION PURSUANT TO 42 U.S.C. § 1983 (AGAINST DEFENDANTS SHERIFF KENNETH SEALEY, KENNETH SNEAD, JOEL GARTH LOCKLEAR, PAUL CANADY, ADMINISTRATOR C.T.A. OF THE ESTATE OF LUTHER HAGGINS)

151. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs # 1-123, 135, 146, 147 with the same force and effect as if fully set forth herein.

152. At all times mentioned herein, Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** were state actors as law enforcement agents employed by the Robeson County Sheriff and the Town of Red Springs and acted under color of state law.

153. In the manner described more fully above, Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins,** acting

Case 5:15-cv-00451-BO   Document 70   Filed 03/24/16   Page 30 of 39

individually, jointly, and in conspiracy with each other, instigated, initiated, procured, influenced, or participated in the decision to prosecute Plaintiff **Henry Lee McCollum.**

154.  In the manner described more fully above, Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins,** acting individually, jointly, and in conspiracy with each other, instigated, initiated procured, influenced, or participated in the decision to prosecute Plaintiff **Leon Brown.**

155.  Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** lacked probable cause to arrest or initiate criminal proceedings against Plaintiff **Henry Lee McCollum.**

156.  Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** lacked probable cause to arrest or initiate criminal proceedings against Plaintiff **Leon Brown.**

157.  Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** accused Plaintiff **Henry Lee McCollum** of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors and to the North Carolina courts with the intent of exerting influence to institute and continue the judicial proceedings.

158.  Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** accused Plaintiff **Leon Brown** of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors and to the North Carolina courts with the intent of exerting influence to institute and continue the judicial proceedings.

31

159. Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** made statements to the prosecutor and the North Carolina courts regarding the culpability of Plaintiff **Henry Lee McCollum** with knowledge that said statements were false and perjured.

160. Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** made statements to the prosecutor and the North Carolina courts regarding the culpability of Plaintiff **Leon Brown** with knowledge that said statements were false and perjured.

161. Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** deliberately, knowingly, and intentionally withheld exculpatory information from the prosecutor, the North Carolina courts, and Plaintiffs' defense counsel.

162. Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** committed the aforementioned acts of misconduct maliciously in order to obtain a collateral objective outside the legitimate ends of the legal process.

163. The criminal proceedings against Plaintiffs **Henry McCollum and Leon Brown** were terminated in their favor when their Motions for Appropriate Relief were granted, their convictions vacated, and the charges against them dismissed by the District Attorney, and when the Governor of North Carolina issued Plaintiffs pardons of innocence.

164. As a direct and proximate result of the Defendants' actions, Plaintiffs' Constitutional rights were violated and they suffered injuries and damages, including but not limited to loss of liberty, physical sickness and injury, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

32

## FOURTH CAUSE OF ACTION

### MUNICIPAL LIABILITY PURSUANT TO 42 U.S.C. § 1983
### (AGAINST DEFENDANTS COUNTY OF ROBESON,
### TOWN OF RED SPRINGS, AND SHERIFF KENNETH SEALEY)

165.   Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs # 1-123, 135, 146, 147 with the same force and effect as if fully set forth herein.

166.   **Luther Haggins** was the Chief of Police of the Red Springs Police Department, a division of the Defendant **Town of Red Springs**.

167.   As Chief of Police of the Red Springs Police Department, **Luther Haggins** was responsible for developing, implementing, promulgating, and enforcing customs, usages, practices, procedures, policies, and rules of law enforcement agents and police officers employed by and acting under the authority of the Defendant **Town of Red Springs.**

168.   Defendant **Kenneth Sealey** is the current elected Sheriff of **Robeson County**, and as such, is a successor-in-interest to the Robeson County Sheriff in office in 1983 when the acts complained of herein occurred.

169.   At all times mentioned in this Complaint, Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** acted pursuant to customs, usages, practices, procedures, policies, and rules of Defendants **Robeson County** and **Town of Red Springs**.

170.   At all times mentioned in this Complaint, Defendants **Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen,** and **Luther Haggins** acted under color of law and under the authority, direction and control of the Defendant **Robeson County** and Defendant **Town of Red Springs.**

171. The aforementioned constitutional violations were proximately caused by one or more of the customs, usages, practices, procedures, policies, and rules of Defendants **Robeson County** and **Town of Red Springs** including but not limited to falsely implicating criminal suspects by unlawfully withholding and suppressing exculpatory evidence, coercing and threatening witnesses into providing false inculpatory testimony, failing to investigate exculpatory evidence, providing their own false testimony, and fabricating false evidence.

172. It was further custom, usage, practice, procedure, and policy of Defendants **Robeson County** and **Town of Red Springs** to fail to train, discipline and/or supervise police officers as to prevent them from falsely implicating criminal suspects by unlawfully withholding and suppressing exculpatory evidence, coercing and threatening witnesses into providing false inculpatory testimony, failing to investigate exculpatory evidence, providing their own false testimony, and fabricating false evidence.

173. Defendants **Robeson County** and **Town of Red Springs** knew or had reason to know to a moral certainty that its police officers would confront situations conducive to fabricating false identifications through unlawfully withholding and suppressing exculpatory evidence, coercing and threatening witnesses into providing false inculpatory testimony, failing to investigate exculpatory evidence, providing their own false testimony, and fabricating false evidence.

174. Defendants **Robeson County** and **Town of Red Springs** knew that such situations would lead to difficult decisions of the type that training, supervision, and/or discipline would help resolve.

175. Defendants **Robeson County** and **Town of Red Springs** knew that in the event of an incorrect decision, constitutional deprivations were highly likely to occur.

176.  There are many facts and circumstances from which these customs, usages, practices, procedures, policies, and rules may be inferred. The fact that suspect Roscoe Artis was not further investigated despite the fact that he lived in close proximity to the crime scene, committed a nearly identical crime in the same manner approximately one month after Sabrina Buie was found dead, and had an extensive criminal history which almost exclusively included violent sexual offenses against young women, indicates that Defendants **Robeson County** and **Town of Red Springs,** failed to adequately implement training, supervision, and/or discipline to prevent these types of reckless oversights.

177.  Defendants **Robeson County** and **Town of Red Springs** continue to implement customs, usages, practices, procedures, policies, and rules that permit police officers to engage in the practice of withholding exculpatory evidence which is supported by the repeated failure by Red Spring Police Department to provide the North Carolina Innocence Inquiry Commission with Plaintiff's case files from the initial request in November of 2010 until 2014. This contributed to additional wrongful incarceration as the North Carolina Innocence Inquiry Commission's investigations was delayed substantially.

178.  This widespread practice was so well-settled as to constitute <u>de</u> <u>facto</u> policy of Defendant **Robeson County** and Defendant **Town of Red Springs**, and it was allowed to exist because municipal policymakers, including **Luther Haggins** and the Robeson County Sheriff, with authority over the same, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

179.  In addition, the chief municipal policymaker of Defendant **Town of Red Springs** (**Luther Haggins)** personally participated in the misconduct alleged in this Complaint against the Plaintiffs, thereby actually approving the actions, omissions, and misconduct of Defendants

35

**Kenneth Sealey, Kenneth Snead, Joel Garth Locklear, Larry Floyd, Leroy Allen** in falsely arresting, maliciously prosecuting, and intentionally depriving the Plaintiffs of their Constitutional civil rights. In short, **Luther Haggins** led by example.

180. Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because Defendant **Robeson County** and Defendant **Town of Red Springs** declined to implement sufficient policies or training on the disclosure of exculpatory evidence, fabrication of evidence, feeding information to witnesses, engaging in coercive, leading, or unduly suggestive questioning of witnesses, or use of coercion or threats against witnesses, even though the need for such policies and training was obvious.

181. In addition, the misconduct described in this Count was undertaken pursuant to the policy and practice of the Defendant **Robeson County** and Defendant **Town of Red Springs** in that the violation of Plaintiff's rights described in this Count was caused by the actions of policymakers for these Defendants.

182. By reason of the foregoing, Defendant **Robeson County**, Defendant **Town of Red Springs**, and Defendant **Kenneth Sealey** are liable to Plaintiffs' rights pursuant to 42 U.S.C. § 1983 for damages in an amount to be determined at trial.

<u>**CONCLUSION AND PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs respectfully demand judgment against each of the Defendants named herein on each cause of action as follows:

(1) a declaratory judgment finding that Defendants have violated Plaintiff's civil rights under the United States Constitution;

(2) an award of compensatory and punitive damages in favor of Plaintiffs for deprivation of Constitutional rights;

36

(3) an award of reasonably attorneys' fees as provided by statute, together with the costs and disbursements of this action; and

(4) Such other and further relief as this Court may deem just, proper and equitable.

Dated: March 24, 2016

Respectfully Submitted,

_____

Patrick Michael Megaro, Esq.
Halscott Megaro, P.A.
33 East Robinson Street, Suite 210
Orlando, Florida 32801
(o) 407-255-2168
(f) 855-224-1671
pmegaro@appealslawgroup.com
Florida Bar ID # 738913
New Jersey Bar ID # 3634-2002
New York Bar ID # 4094983
North Carolina Bar ID # 46770
Texas Bar ID # 24091024
Washington State Bar ID # 50050

37

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 24, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and served upon counsel for Defendants via CM/ECF.

Bradley O. Wood, Esq.
Womble Carlyle Sandridge & Rice, LLP
One West Fourth Street
Winston-Salem NC 27101

James R. Morgan, Jr., Esq.
Womble Carlyle Sandridge & Rice, LLP
One West Fourth Street
Winston-Salem NC 27101

Hal F. Askins, Esq.
NC Department of Justice
PO Box 629
Raleigh NC 27602

Jennifer Joy Strickland, Esq.
NC Department of Justice
PO Box 629
Raleigh NC 27602

Garris Neil Yarborough, Esq.
Yarborough, Winters & Neville, P.A.
P.O. Box 705
Fayetteville, North Carolina 28302

Timothy C. Smith, Esq.,
Yarborough, Winters & Neville, P.A.
P.O. Box 705
Fayetteville, North Carolina 28302

Joel Garth Locklear
402 Breece Street
Pembroke, North Carolina 28412
**VIA UNITED STATES MAIL**

Sarah A. Locklear
402 Breece Street
Pembroke, North Carolina 28412
**VIA UNITED STATES MAIL**

38

Paul T. Canady, Esq.
PO Box 7
St. Pauls, North Carolina 28384
**VIA UNITED STATES MAIL**

_/s/ Patrick Michael Megaro, Esq_
Patrick Michael Megaro, Esq.