IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-451-BO

| | |
|---|---|
| RAYMOND TARLTON, as guardian ad litem for HENRY LEE MCCOLLUM and J. DUANE GILLIAM, as guardian of the estate of LEON BROWN,<br>              Plaintiffs,<br><br>v.<br><br>TOWN OF RED SPRINGS, *et al.*<br><br>              Defendants. | O R D E R |

This cause comes before the Court on a motion by the guardian ad litem for plaintiff McCollum to determine whether the representation agreement is valid and whether a conflict exists as well as a motion by counsel for plaintiffs to terminate the guardian ad litem appointed to represent the interests of plaintiff Henry Lee McCollum in this matter.

BACKGROUND

As is relevant to the instant motion, the procedural background begins with a hearing held before the undersigned on May 5, 2017, wherein the issue of plaintiff Henry McCollum's competence to proceed for himself was raised. The case had been called for hearing for the Court to consider whether to approve a settlement agreement between plaintiffs and defendants associated with the Town of Red Springs (Town of Red Springs defendants); such hearing was necessary as plaintiff Leon Brown, who was found after a hearing before the Clerk of Cumberland County Superior Court to be incompetent, has proceeded in this matter since March 14, 2017, through a guardian, now the guardian of his estate, J. Duane Gilliam. The motion to approve the settlement filed by counsel for McCollum and Brown raised the issue of McCollum's competence

to proceed in this matter. In the motion, plaintiffs contended that McCollum, although having previously tested as having a low intelligence quotient, had not been determined to be incompetent by any court and that Thomas J. Harbin, Ph.D., had evaluated McCollum for competence and had found McCollum competent to enter into the settlement with the Town of Red Springs defendants.

Following the hearing, the Court denied without prejudice the motion to approve settlement and appointed a guardian ad litem to protect McCollum's interests, noting its concern regarding McCollum's competency and the mandate of Rule 17(c) that a court *must* appoint a guardian ad litem to protect a minor or incompetent person. [DE 204]. The Court appointed attorney Raymond Tarlton to serve as guardian ad litem for McCollum. Approximately eleven weeks later, prior to a hearing in this matter which had been scheduled on the pending summary judgment motions, Tarlton filed a motion requesting that the Court determine whether the representation agreement between McCollum and his counsel is valid and whether a conflict exists. Counsel for McCollum responded, as did the Town of Red Springs defendants, who did not take a position on the guardian's motion but responded to state their position that the settlement as negotiated is fair.

On August 10, 2017, a hearing was again held before the undersigned. The Court heard testimony from McCollum, Dr. Thomas Harbin, and Ken Rose, an attorney who previously represented McCollum. The following day, the Court ordered McCollum's guardian ad litem to submit a proposed expert to evaluate McCollum for competence to proceed for himself in this matter. Tarlton proffered George Patrick Corvin, M.D., a forensic psychiatrist. Counsel for plaintiffs and the Town of Red Springs had previously proffered experts to render an opinion as to McCollum's competence.[1] After review of the experts submitted by the parties, the Court

---

[1] Plaintiffs proffered Kolleen Fox, Ph.D. [DE 205] and the Town of Red Springs defendants proffered James Bellard, M.D. and Claudia Coleman, Ph.D. [DE 203]. The Town of Red Springs defendants indicated in their proffer of experts that "Counsel for Plaintiffs has informed

2

appointed Dr. Corvin to conduct an evaluation of McCollum and to offer an opinion regarding whether McCollum has the practical ability to manage his own affairs. Counsel for plaintiffs on August 15, 2017, filed a motion to terminate McCollum's guardian ad litem and to dispense with further competency testing.

On September 12, 2017, Dr. Corvin filed his report and on September 14, 2017, counsel for plaintiffs filed objections to Dr. Corvin's report. It is in this posture that the case comes before the undersigned. The Court considers first whether, based on the evidence presented, the testimony received, and the evaluations submitted by the experts, McCollum is competent to proceed for himself in this matter. Second, the Court considers whether the representation agreement entered into by McCollum and counsel is invalid.

## DISCUSSION

I. COMPETENCY DETERMINATION AND MOTION TO EXCLUDE GUARDIAN AD LITEM

A. *Applicable legal standards*

Rule 17(c) of the Federal Rules of Civil Procedure provides that a district court shall appoint a guardian ad litem for an incompetent person not otherwise represented or shall order otherwise for the protection of the incompetent person.

> A guardian ad litem is appointed as a representative of the court to act for the [incompetent party] in the cause, with authority to engage counsel, file suit and to prosecute, control and direct the litigation. As an officer of the court the guardian ad litem has full responsibility to assist the court 'to secure the just, speedy and inexpensive determination' of the action.

*Fong Sik Leung v. Dulles*, 226 F.2d 74, 82 (9th Cir. 1955); *see also Genesco, Inc. v. Cone Mills Corp.*, 604 F.2d 281, 285 (4th Cir. 1979) (under North Carolina law, guardian ad litem is the court's officer appointed for the purpose of taking care of the infant's rights). A court may consider

---

the counsel for the Town the Plaintiff's will proffer George Corvin, M.D. for the subject evaluation. The Town has no objection to the appointment of Dr. Corvin." [DE 203].

3

the appropriateness of appointment of a guardian ad litem *sua sponte*, *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 203 (2d Cir. 2003), and the fact that a party determined to be incompetent is represented by counsel does not prevent the appointment of a guardian ad litem. *See Noe v. True*, 507 F.2d 9, 12 (6th Cir. 1974) (duties of guardian ad litem and counsel are different); *Zaro v. Strauss*, 167 F.2d 218, 220 (5th Cir. 1948) (representation by counsel is insufficient for determination that an incompetent or minor party is otherwise represented for purposes of Rule 17(c)); *but see SUSAN BUTLER, Plaintiff, v. NORMAN ROSS, Defendant.*, No. 16CV1282 (DLC), 2017 WL 4417700, at *8 n.5 (S.D.N.Y. Oct. 3, 2017) (noting that Second Circuit had not followed Fifth and Sixth Circuits on this question). Moreover, "nothing in the rule prohibits the district court from appointing a guardian ad litem to represent a person not previously adjudicated as incompetent through a state proceeding." *Fonner v. Fairfax Cty., VA*, 415 F.3d 325, 330 (4th Cir. 2005).

Although Rule 17(c) is silent as to what law should apply in determining whether a party is incompetent, the requirement in Rule 17(b) that the court apply the law of the individual's domicile has been held to apply to determinations under Rule 17(c). *See, e.g., Thomas v. Humfield*, 916 F.2d 1032, 1035 (5th Cir. 1990); *Wolfe by Hedges v. Bias*, 601 F. Supp. 426, 427–28 (S.D.W. Va. 1984). However, "insofar as state law might be read to preclude the federal court from exercising its appointive power under Rule 17(c), it must give way, Rule 17(b) notwithstanding," *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 656 (2d Cir. 1999) (quoting 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1571, at 511 (2d ed.1990)). A federal court need not use the state's procedures for determining competency, so long as its procedures comport with due process. *Thomas*, 916 F.2d at 1035. The Due Process Clause of the Fifth Amendment limits the court's discretion with respect to the procedures used in

4

determining whether to appoint a guardian ad litem because litigants "possess[] liberty interests in avoiding the stigma of being found incompetent and in retaining personal control over the litigation." *Neilson*, 199 F.3d at 651 (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).

"Domicile requires physical presence, coupled with an intent to make the State a home." *Johnson v. Advance Am.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008). The record reflects that McCollum is originally from and prior to his incarceration resided in New Jersey, that he currently resides in Virginia, and that he resided in North Carolina during his thirty-one years of incarceration and for approximately two years following his release. Although the record is limited on this issue, the Court will presume for the purposes of its determination that at the time this suit was filed in 2015 McCollum was domiciled in North Carolina where he was living at the time.[2] *See Kollsman, a Div. of Sequa Corp. v. Cohen*, 996 F.2d 702, 705 (4th Cir. 1993) (proper domicile for purposes of Rule 17(c) determination was domicile at time of service of process). Under North Carolina law, an incompetent adult is defined as

> an adult or emancipated minor who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition.

N.C. Gen. Stat. § 35A-1101(7).[3]

---

[2] The Court has not considered McCollum's period of incarceration in making this determination. *See Roberts v. Morchower*, 956 F.2d 1163 (4th Cir. 1992) (unpublished) (a prisoner's domicile is presumed to be where he was domiciled prior to incarceration).

[3] Virginia law concerning the competence of an adult to proceed for himself is substantially similar. *See* Va. Code Ann. § 8.01-2(6)(e) (defining a person under a disability to include "any other person who . . . is determined to be (i) incapable of taking proper care of his person, or (ii) incapable of properly handling and managing his estate, or (iii) otherwise unable to defend his property or legal rights either because of age or temporary or permanent impairment, whether physical, mental, or both." Virginia law expressly permits an attorney who has entered an appearance on behalf of an incompetent person to act as guardian ad litem, unless the court

5

B. *Review of the evidence*

It is well documented in the record of this case that McCollum's intelligence quotient (IQ) range has consistently tested in the 50s and 60s, representing evidence of what today is termed an intellectual disability. *See, e.g.* Pet. for compensation pursuant to Ch. 148, Art. 8, N.C.G.S. [DE 146-17] ("Mr. McCollum's Intelligence Quotient has been scored at 56"); *McCollum v. North Carolina*, 512 U.S. 1254, 1255 (1994) (Blackmun, J., dissenting) (McCollum "has an IQ between 60 and 69 and the mental age of a 9-year-old. He reads on a second-grade level."); *see also* Corvin Rep. [DE 228-1] at 5[4]; Janoson Rep. [DE 147-24] at 2 (McCollum was in special education classes beginning in the first grade, left school in the ninth grade, and has a history of being diagnosed with either borderline intellectual functioning or intellectual deficiency). The record in the criminal case, including reports and affidavits received in the 1990s, further reflects opinions which support the presence of neurological impairment due at least in part to an early childhood head trauma with hospitalization. *See* Coleman Aff. [DE 146-4] at 2. In 1995, McCollum was found to be mentally retarded and his testing scores revealed that McCollum "more likely than not has suffered specific cognitive impairment beyond that expected by his level of mental retardation." Rogers Aff. [DE 146-8] at 2. McCollum's impairment was found to be "exacerbated by emotional disturbances." *Id.* Dr. Rogers opined that McCollum was generally incapable of weighing and understanding the consequences of his choices and that his mental and emotional limitations prevented him from thoroughly understanding his attorneys. *Id.* at 2-3. Dr. Baroff noted in 1995 that "McCollum's combination of mental and emotional disabilities, including his neuropsychological deficit, render him even more vulnerable to stress than other youth with similar

---

determines that the interests of justice require appointment of a separate guardian ad litem. Va. Code Ann. § 8.01-9.

[4] Page numbers in the following citations refer to the original document page number.

6

IQs." Baroff Aff. [DE 146-6] at 3. Dr. Baroff further found McCollum's level of "listening understanding" to be comparable to that of a first-grader or six-year-old child. *Id.*

Recent opinions by mental health and medical professionals include the following. Dr. Janosen, an expert proffered by plaintiffs in this case, found McCollum today to be an extremely suggestible and compliant individual who is highly dependent and whose day-to-day coping is disorganized. Janoson Rep. [DE 147-24] at 15. Dr. Janosen further noted that "[i]t is apparent that after years of reviewing the Miranda Rights, *Mr. McCollum still does not understand that one can have an attorney before the interrogation.*" Janoson Rep. [DE 147-24] at 3 (emphasis in original). McCollum's elevated score on the Variable Response Inconsistency Scale administered by Dr. Janosen was "due at least in part to limitations in his ability to comprehend the items." Janoson Rep. [DE 147-24] at 13. Dr. Harbin, a psychologist proffered by McCollum who later opined that McCollum is competent to enter into a settlement agreement, found McCollum after examination to be "unable to make many everyday decisions." Harbin Rep. [DE 147-21] at 8.

Dr. Harbin testified at the August 10, 2017, hearing before the undersigned that after conducting an interview he was of the opinion that McCollum was competent to knowledgably accept or reject an offer of settlement. 10 August 2017 Hrg. Tr. at 24. In his report, Dr. Harbin found that McCollum is aware of his finances and financial status, is aware he has made poor financial decisions in the past, that McCollum has the intention to husband his resources more carefully in the future, and that McCollum described reasonable and rationale plans for future financial decisions. Harbin Rep. [DE 214-2] at 2. Dr. Harbin further found McCollum to understand the nature and amount of the settlement offer and that McCollum is capable of exercising rationale judgment and weighing the consequences of his decisions. *Id.*

7

Dr. Corvin, appointed by the Court to conduct a competency evaluation, diagnosed McCollum with mild intellectual developmental disorder, unspecified neurocognitive disorder with frontal lobe/executive function impairment, and post-traumatic stress disorder. Corvin Rep. [DE 228-1] at 11. In his report, Dr. Corvin noted that individuals with mild intellectual development disorder may function appropriately in terms of personal care but will in varying degrees typically need some assistance or support with more complex tasks. Dr. Corvin noted McCollum's ability to retain and recite information, but also that he utilizes the information in a concrete and impulsive manner, specifically likening McCollum's abilities to those of a nine or ten year old child. *Id.* at 13. Dr. Corvin opined that, as a result of his long-sustained intellectual and psychological limitations which result from his intellectual developmental disorder and frontal lobe impairment, McCollum "lacks the practical ability to manage his own affairs, including, among others, the ability to communicate important decisions regarding his person and property, without the regular assistance of others." *Id.* at 14.

McCollum's testimony at the August 10, 2017, hearing primarily concerned his current activities and endeavors. McCollum discussed at length the experiences he has had since leaving prison and the skills he has obtained. McCollum is engaged to be married, he is studying to obtain his driver's license, he has a bank account, and he knows how to draw money and budget for bills and expenses. 10 August 2017 Hrg. Tr. at 30. McCollum is currently writing a book about his life and has computers and a cell phone which he can use. *Id.* at 40-44. While on death row, McCollum took classes in drawing, adding and subtracting, history, and spelling. McCollum testified that he does not need help managing his affairs or his money. *Id.* at 49.

Regarding his representation by current counsel, McCollum testified that he met counsel for the first time on March 1, 2015, at his home in Fayetteville, North Carolina. McCollum

8

testified that prior to signing a retainer agreement counsel explained the agreement to him, answered any questions he had about the agreement, and that McCollum understood that he could fire counsel at any time, even if, for example, McCollum did not like the color of counsel's tie. Counsel asked McCollum whether the representation provides that McCollum would have to pay counsel even if he fired counsel, to which McCollum responded "yes". Counsel then confirmed with McCollum that McCollum understands that the only time counsel would earn money is if McCollum got paid. *Id.* at 45-46. McCollum explained that he has never had any problems with his current counsel, that they talk every day, and that he wants his current counsel to continue to represent him in this matter. *Id.* at 47-51.

Finally, Ken Rose, McCollum's former attorney, testified at the August 10, 2017, hearing. Mr. Rose testified that he began representing McCollum in 1994 in a post-conviction challenge to his death sentence. Mr. Rose testified that two experts opined during the post-conviction proceedings that McCollum was not competent to provide a confession and that other experts had evaluated McCollum and found him to be intellectually disabled and brain damaged. *Id.* at 58-59. Mr. Rose's impression is that the same vulnerability that subjected McCollum to giving a false confession continues to make him vulnerable to manipulation and control by others. *Id.* at 63.

C.  *Court's discussion*

At the outset, the Court addresses McCollum's request, through counsel, for an evidentiary hearing/trial by jury on the issue of competence, citing N.C. Gen. Stat. § 35A-1112(b). *See also* N.C. Gen. Stat. § 35A-1110. As discussed above, this Court need not use North Carolina's procedures for determining competency, so long as its procedures comport with due process. The Court has held an evidentiary hearing at which McCollum and his expert testified. Counsel for McCollum has received a copy of Dr. Corvin's report and has had an opportunity to respond and

9

to offer the response of Dr. Harbin. The Court has considered all of this and finds that a determination of competence at this stage and without further hearing comports with due process. *See Thomas*, 916 F.2d at 1033. Additionally, post-appointment review is available, and the Court may remove a guardian ad litem at any time. *See Neilson*, 199 F.3d at 652 (listing cases holding same).

In its review of the evidence presented, the Court recognizes that some of the medical and psychological opinions in this record were provided more than twenty years ago, but it has been presented with no evidence or persuasive argument that the intervening nineteen years McCollum spent on death row before his release would have so dramatically altered his personal circumstances as to render such opinions moot. The Court further recognizes that the issue of competence to proceed in a criminal case or to make a reliable confession are not the issues currently before the Court, *see, e.g. United States v. Charters*, 829 F.2d 479, 495 n. 23 (4th Cir. 1987), on reh'g, 863 F.2d 302 (4th Cir. 1988) ("person may be competent to make some decisions but not others.") (citation omitted), nor are they so far afield, however, that the Court will disregard their presence in this case.

McCollum's historical presentation certainly raises the question of his competence, as was noted by his counsel in the motion to approve the settlement with the Town of Red Springs defendants. McCollum's current presentation confirms to the Court that he is, in fact, incompetent to proceed for himself in this matter. McCollum, understandably, opposes a finding that he is incompetent. The Court credits Dr. Corvin's opinion and discussion on this issue, which found that

> Mr. McCollum appears to possess a very strong desire to be independent and make his own decisions, a finding that is not at all surprising given that for the entirety of his lengthy incarceration almost every decision in his life was made for him. As such, it is certainly understandable that Mr. McCollum would react quite negatively

10

to any assertion that he lacks the ability to make decisions for himself now that he
has been released from prison.

Corvin Rep. [DE 228-1] at 12.

Despite his desire to proceed for himself and manage his own affairs, McCollum continues to evince signs of being easily manipulated and a lack of understanding of his attorneys. For example, when questioned by Dr. Corvin about the fee arrangement with his attorneys in this matter, McCollum explained that, under New York law, his attorneys are supposed to get one-third of any recovery, because as New York and Florida lawyers they are totally different from lawyers in North Carolina and the south. Corvin Eval. Tr. [DE 229-1] at 144. McCollum further explained that he received half or less than half of his award from the North Carolina Industrial Commission for his pardon of innocence because, as his attorneys explained, they had to take out money for his future civil case and expenses. Corvin Eval. Tr. [DE 229-1] at 59.

The Court is further instructed by the following evidence relevant to McCollum's ability to manage his financial affairs. In September 2015, McCollum was awarded $750,000 from the North Carolina Industrial Commission following his pardon of innocence and in May 2016 had borrowed $50,000 at 18% interest compounded every six months. 10 August 2017 Hrg. Tr. at 26-27. McCollum borrowed another $15,000 at 18% interest compounded every six months in November 2016. Prior to the Industrial Commission award, McCollum had borrowed $100,000 from the same source, which was finalized on March 4, 2015, and included a $5,000 application and monitoring fee and 19% interest compounded every six months. [DE 211, 211-1]. McCollum's attorney assisted him in in obtaining these loans, and McCollum believes that the terms of these loans are favorable because he is the one who borrowed the money. Corvin Eval. Tr. at 10.

Although McCollum is aware that $20,000 from the first loan was paid to two non-attorneys, Kimberly Weekes and Deborah Pointer, McCollum testified that he did not know anything about these women or why they were paid. 10 August 2017 Hrg. Tr. at 53-54. Kimberly Weekes and Deborah Pointer have been described as activists who worked on behalf of McCollum and Brown in their efforts to obtain a pardon.[5] An independent contractor agreement for advocacy civil rights services was apparently entered into with Pointer and Weekes by Geraldine Brown, McCollum and Brown's sister, in January 2015; Geraldine Brown is listed on the contract as guardian for McCollum and Brown. [DE 211-1]. The independent contractor agreement provides for payment to Pointer and Weekes of 10% of monetary advance, 5% of penal funds, and 1% of civil lawsuit settlement. *Id.* It is not clear whether McCollum understands that this agreement was entered into on his behalf by Ms. Brown or whether he understands that Pointer and Weekes will expect to receive a share of any future settlement or award.

Also of importance to the Court is that McCollum is currently receiving $735 a month in social security disability benefits. Corvin Eval. Tr. at 123. The Court takes judicial notice that this amount represents a payment under Title XVI of the Social Security Act, which provides supplemental security income (SSI) for disabled individuals who "do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110; https://www.ssa.gov/oact/cola/SSIamts.html (last visited October 16, 2017). Resources for this purpose are defined to include cash, liquid assets, or any real or personal property which could be converted to cash. 20 C.R.F. § 416.1201. That McCollum would qualify for SSI today raises a serious concern regarding his ability to manage his financial and personal

---

[5] *See, e.g.,* Mandy Locke and Joseph Neff, *Pardoned brothers' payout triggers fight over who gets a cut,* News & Observer, April 28, 2017.

affairs, despite the fact that McCollum has stated that he understands how to set aside money for rent and bills each month.

In considering the opinions of Drs. Corvin and Harbin as to McCollum's capacity in this case, the Court credits and places greater weight on the opinion of Dr. Corvin.[6] As Dr. Corvin's report recognizes, characteristics of mild intellectual disability include impairment of executive functions such as planning and strategizing as well as generally needing support to make health and legal decisions. Diagnostic and Statistical Manual of Mental Disorders, Fifth Ed., at 34. Moreover, the Court credits Dr. Corvin's conclusion that McCollum's inability to manage his affairs is not solely based on his IQ score or diagnosis of intellectual disability; rather, it is the combination of McCollum's intellectual disability, frontal lobe impairment, and post-traumatic stress disorder which renders McCollum incompetent. As noted above, the Court's decision is further informed by the financial arrangements McCollum has entered into since his release and his lack of knowledge and understanding of where or to whom the money he has been awarded or loaned has been provided. Although Dr. Harbin testified that McCollum had sufficiently convinced him that he understood how to not "blow his money," such concern misses the mark. An exonerated individual plainly may spend any money received as a result of his wrongful conviction how he chooses; here, however, it is clear that McCollum is unaware or lacks a complete understanding of his financial circumstances, and that he has not chosen how much of the money he has already received would be spent.

Based upon its review of the historical records and the current evaluations and testimony, the Court concludes that McCollum is unable to make important decisions about his person and

---

[6] Although Dr. Harbin has filed a response to Dr. Corvin's report challenging its methodologies, including the testing conducted, and conclusions, the Court would note that Dr. Harbin's assessment of McCollum's competency was based on a record review and a conversation and included no testing which was mentioned in the report. *See* [DE 214-2].

13

property, in particular this litigation and any settlement or award associated with it. Although McCollum gained knowledge and skills to function in society after his release, the record also demonstrates that he remains easily manipulated and that he lacks understanding about the effects of his decisions or those that others have made concerning his interests.

II. REQUEST THAT THE COURT DETERMINE WHETHER THE REPRESENTATION AGREEMENT IS VALID

McCollum's guardian ad litem has requested that the Court determine whether McCollum's representation agreement with his current counsel is valid and whether a conflict exists between the interests of counsel for McCollum and McCollum. As it has been presented with no evidence that McCollum's lack of competence is a result of any action or incident which occurred after his entry into a representation agreement with counsel, the Court concludes based on the foregoing that McCollum lacked capacity to enter into a representation agreement with counsel in March 2015.

Although counsel now takes the position that McCollum and Brown were competent when they signed the representation agreement, this position is untenable in light of the facts of this case. For example, the representation agreement, dated February 27, 2015,[7] is addressed to Henry Lee McCollum, Leon Brown, and Geraldine Brown; it is signed by counsel, McCollum, Leon Brown, and Geraldine Brown as "attorney in fact." There is no reference in the agreement to Ms. Brown's serving as attorney in fact to Leon Brown but not McCollum. [DE 211-3]. On March 2, 2015, Deborah Pointer emailed a copy of an independent contractor agreement for advocacy civil rights services to counsel for plaintiffs; the contract plainly identifies Geraldine Brown as guardian for Leon Brown *and* McCollum and it is signed only by Geraldine Brown. [DE 211-1]. In the claim

---

[7] The date the representation agreement was signed does not appear on the face of the document, although the Court notes that at the 10 August 2017 hearing counsel asked McCollum whether they had reviewed the contract on March 1, 2015, during their first meeting.

for wrongful imprisonment/wrongful conviction filed by counsel with the Industrial Commission, counsel noted that McCollum's IQ had been scored at 56 and Leon Brown's IQ had been scored at 54, placing both men within the intellectually disabled range. [DE 211-7 at 1].

In other words, counsel was plainly on notice that his potential clients had intellectual disabilities and that their abilities to proceed without a guardian were at issue. Nonetheless, counsel entered into a representation agreement and has, to the Court's knowledge, never sought to have the agreement ratified by any duly appointed guardian for either plaintiff. Accordingly, the Court finds that, based on McCollum's incompetence, the representation agreement between counsel and McCollum is invalid. In light of this finding, guardian for plaintiff Brown, J. Duane Gilliam, is hereby ORDERED to demonstrate whether the representation agreement between counsel and Brown is invalid due to Brown's incompetence at the time he entered into the agreement.

## CONCLUSION

Accordingly, the Court finds plaintiff McCollum to be incompetent to proceed for himself in this matter and declines to disturb its appointment of a guardian ad litem for McCollum. The motion to terminate guardian ad litem [DE 223] is DENIED. The motion to determine whether the representation agreement is valid [DE 211] is GRANTED IN PART. The Court finds the representation agreement between counsel and McCollum to be INVALID in light of McCollum's inability to manage his own affairs or to make or communicate important decisions. J. Duane Gilliam, as guardian of the estate of Leon Brown, shall RESPOND within thirty (30) days of the date of entry of this order as to whether the representation agreement between plaintiffs' counsel and Leon Brown is valid or can be ratified.

For good cause shown, the motions to seal at [DE 215, 230, 232] are GRANTED subject to reconsideration by the Court. The motion for leave to file excess pages [DE 216] is GRANTED. In light of the proposed intervenors' failure to file a request for ruling on the motion to intervene [DE 209], the motion [DE 192] is DENIED WITHOUT PREJUDICE.

SO ORDERED, this 23 day of October, 2017.

							TERRENCE W. BOYLE
							UNITED STATES DISTRICT JUDGE