IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-451-BO

RAYMOND TARLTON, as guardian ad litem for )
HENRY LEE MCCOLLUM, *et al.*, )
)
Plaintiffs, )
)
v. )                                        O R D E R
)
KENNETH SEALEY, both individually and in his )
official capacity as Sheriff of Robeson County, )
*et al.*, )
)
Defendants. )

This cause comes before the Court on a motion by plaintiffs for attorney fees and costs

pursuant to Fed. R. Civ. P. 54 and 42 U.S.C. § 1988. Defendants Leroy Allen and Charlotte Noel

Fox, as Administrator of the Estate of Kenneth Snead, have responded, plaintiffs have replied, and

the matter is ripe for ruling. For the reasons that follow, plaintiffs' motion is granted in part and

denied in part.

BACKGROUND

Plaintiffs instituted this action on August 31, 2015, alleging claims against three sets of

defendants arising out of their wrongful conviction for the 1983 rape and murder of Sabrina Buie.

Plaintiffs settled their claims with defendants the Town of Red Springs, Larry Floyd, and Paul

Canady, Administrator C.T.A. of the Estate of Luther Haggins ("Red Springs defendants") in

December 2017 for $1 million. [DE 253]. Plaintiff's case proceeded against Kenneth Sealey and

Robert E. Price, Administrator C.T.A. of the Estate of Joel Garth Locklear, Sr., with the Robeson

County Sheriff's Office ("Robeson County defendants") and defendants Leroy Allen and Charlotte

Fox for the Estate of Kenneth Snead with the State Bureau of Investigation ("SBI defendants" or "defendants Allen and Snead"). A jury trial commenced against the Robeson County and SBI defendants on May 10, 2021. Prior to the jury's verdict, plaintiffs settled their claims against the Robeson County defendants for $9 million. [DE 425]. On May 14, 2021, a jury returned a verdict in plaintiffs' favor and against the SBI defendants, awarding each plaintiff $31 million in compensatory damages, plaintiff Henry McCollum $8 million in punitive damages, and plaintiff Leon Brown $5 million in punitive damages, for a total award of $75 million in damages. [DE 427].

The relevant procedural history is as follows. Raymond Tarlton with the Raleigh, North Carolina law firm of Tarlton Polk, PLLC was appointed by the Court as guardian ad litem to protect the interests of plaintiff Henry McCollum on May 10, 2017, due to the Court's concerns regarding Mr. McCollum's competency to proceed without a guardian. [DE 204]. The Court directed that Mr. Tarlton's fees would be included in the costs of court. *Id.*

Plaintiffs' current counsel, attorneys from the law firms of Hogan Lovells US LLP in Washington, D.C. and an attorney from the Raleigh, North Carolina firm of Cheshire, Parker, Schneider, PLLC noticed their appearance in this case on behalf of Mr. Tarlton, as guardian ad litem for plaintiff Henry McCollum, in April 2018, shortly after the Robeson County and SBI defendants noticed their appeal of the Court's denial of their motions for summary judgment on qualified immunity and other grounds. [DE 272-277]. On May 21, 2018, the Court granted Mr. Tarlton's and Mr. Gilliam's[1] motion to substitute the Cheshire Parker Schneider and Hogan Lovells US attorneys for plaintiffs' then-counsel, Patrick Megaro and his associates Jaime Halscott and Scott Brettschneider. [DE 291]; *see also* [DE 284-289]. Accordingly, although current counsel

---

[1] Mr. Gilliam serves as guardian of the estate for plaintiff Leon Brown and was appointed by the Cumberland County, North Carolina Superior Court. [DE 82-2].

Case 5:15-cv-00451-BO   Document 456   Filed 11/05/21   Page 2 of 13

did not file this action, they have represented the plaintiffs in this action from April 2018 to the present, both before this Court and the court of appeals.

## DISCUSSION

A court may in its discretion award reasonable attorney fees to the prevailing party in an action brought under 42 U.S.C. § 1983. 42 U.S.C. § 1988(b). It is undisputed that plaintiffs are the prevailing parties in this case and that they are entitled to an award of reasonable attorney fees and costs. Defendants Allen and Snead oppose, however, the amount of attorney fees and costs sought by plaintiffs' counsel. In their reply brief, plaintiffs, having made adjustments based upon some of the arguments of defendants, seek the following: $6,639,113.36 in attorney fees and $394,154.69 in costs for Hogan Lovells, LLP; $246,699.75 in attorney fees for Cheshire Parker Schneider, PLLC; and $95,257.50 in guardian ad litem fees for Tarlton Polk, PLLC. [DE 442-1; 451-1; 451-2].

I. Attorney fees

Determination of an attorney fee award involves three steps. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). The Court first determines the lodestar amount by multiplying a reasonable fee rate times the number of reasonable hours expended. *Id.* (citing *Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 243 (4th Cir.2009)). The reasonable rate as well as a reasonable number of hours expended are determined by applying the factors set forth in *Johnson v. Georgia Highway Express Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974).[2] *Id.* In the second step, the Court subtracts any

---

[2] 1) The *Johnson* factors include the "time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship

3

fees for hours spent on unsuccessful claims. *Id.* In the last step, the court awards a percentage of the remaining amount, "depending on the degree of success enjoyed by the [party]." *Id.*

A reasonable attorney fee is one which is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case", and the lodestar amount includes "most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee[.]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986)). In cases of "exceptional success," an enhancement may be applied to the lodestar amount. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

A. Lodestar amount

One of the most impactful points of contention between the parties is whether plaintiffs' Washington, D.C. counsel are entitled to out-of-district rates. Typically, when considering what rates are reasonable, a court looks at the community in which it resides. *See, e.g., Rivers v. Ledford*, 666 F. Supp. 2d 603, 608 (E.D.N.C. 2009). It is permissible, however, to use out-of-district rates when the "services of like quality [are not] available in the locality where the services are rendered; and . . . the party choosing the attorney from elsewhere act[s] reasonably in making that choice." *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988); *see also Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009) (to overcome presumption in favor of within district rates, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result.").

---

between attorney and client; and (12) attorneys' fees awards in similar cases." *McAfee*, 738 F.3d at 88 n.5.

In support of using out-of-district rates, plaintiffs have submitted the declaration of Mr. Tarlton, who ultimately engaged the Hogan Lovells attorneys. [DE 442-4]. Mr. Tarlton states that after determining that new counsel would be required to adequately protect Mr. McCollum's interests in this litigation due to conflicts he uncovered with plaintiffs' then-counsel, he began looking for counsel within this district who could undertake this complex civil rights action, with particular focus on their having sufficient resources to handle an upcoming appeal and possibly a subsequent trial. Mr. Tarlton declares that he encountered law firms with a conflict of interest as well as preexisting commitments which prevented them from taking this case. Finally, Mr. Tarlton notes that some large firms in this area which would have had adequate resources typically represent defendants in civil rights cases and were unwilling to represent plaintiffs.[3]

Mr. Tarlton thus broadened his search and found that Hogan Lovells in Washington, D.C. met his requirements. The Hogan Lovells firm had "significant experience" in civil rights and wrongful convictions cases, specifically complex civil rights cases such as this one; were able to devote substantial resources to this case; and further had appellate specialists who were able to handle the upcoming matter before the court of appeals. Mr. Tarlton's decision to engage the Hogan Lovells firm was reasonable under the circumstances of this case. The Hogan Lovells attorneys were well-qualified to undertake this case, *see* [DE 442-2 ¶¶ 2-13 (listing qualifications and complex civil rights experience of attorneys)], in particular in light of being asked to join the case following entry of an order on summary judgment and not having been engaged as plaintiffs' counsel from the outset. Moreover, the Hogan Lovells attorneys were able to accept the case pro bono, further supporting the reasonableness of the decision to engage them as counsel.

---

[3] Although Allen and Snead take issue with the lack of specificity included in Mr. Tarlton's declaration, the Court is unaware of any requirement that a party identify particular law firms or lawyers he consulted prior to making a decision to engage out-of-district counsel.

The Hogan Lovells attorneys seek hourly rates in the amount of $920-984 for partners, $424-744 for associates, and $292 for paralegal work. The requested rates represent a 20% discount from their current rates. These rates are sufficiently supported by this record, which includes not only a declaration by attorney E. Desmond Hogan but also records from another complex civil rights action in which plaintiffs' counsel were involved and which supports the use of hourly rates ranging from $435 to $1100 for attorneys. *See* [DE 442-5 p. 40]. Those attorney fees and costs were awarded by the United States District Court for the District of Columbia. [DE 442-6].

Defendants do not challenge the rate requested by Mr. Abrams, $425 per hour, and the Court finds this rate to be reasonable. Rather, in opposing the use of out-of-district rates, defendants rely heavily on the participation of the Cheshire Parker Schneider (Cheshire Parker) firm and Mr. Abrams to argue that local attorneys who charge local rates could have handled the case. Mr. Abrams has declared, however, that neither he nor his firm would have been in a position to undertake this case alone. [DE 451-2]. Mr. Abrams further states that the role he was able to play in the case depended on the support of the Hogan Lovells associates. *Id.*

Defendants Allen and Snead further rely on the declaration of attorney Brand Cooper, who has opined as to the reasonableness of the plaintiffs' fee request. *See* [DE 450-1]. Mr. Cooper has identified other North Carolina civil rights cases in which counsel has requested rates more in line with local rates. *Id.* ¶¶ 34-41. But the fact that other law firms have requested fees at lower rate requests does not, by itself, make plaintiffs' request unreasonable. This wrongful conviction action involved evidence dating back almost forty years as well as complex legal issues, and the relevant litigation experience of the Hogan Lovells partners plainly helped secure plaintiffs' success in this case, including the substantial jury award amounting to compensatory damages of $1 million per

year of wrongful imprisonment. *See also Restivo v. Nassau Cty.*, No. 06-CV-6720(JS)(SIL), 2015 WL 7734100, at *3 (E.D.N.Y. Nov. 30, 2015). The out-of-district rates are supported by the relevant *Johnson* factors, in particular the high level of skill required to perform the legal services rendered, the time limitations imposed by the circumstances, and the excellent result obtained. The Court is convinced that, in this instance, it is appropriate to apply the out-of-district rates for the Hogan Lovells attorneys and paralegal.

Defendants Allen and Snead also challenge a number of the hours submitted by plaintiffs as unreasonable. Specifically, they contend that plaintiffs unreasonably staffed the trial, depositions, and pretrial hearings; that counsel has billed for excessive time; and that other time submitted should be reduced or disallowed as unreasonable. Defendants Allen and Snead again rely on the review of plaintiffs' billing records by Mr. Cooper.

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. Initially, plaintiffs sought to be awarded fees for 9,734.8 hours for work by Hogan Lovells and 550.2 hours for work by Cheshire Parker. This reflected the removal by the Hogan Lovells firm of approximately 3,600 hours, or $2,904,662.50, for excess, administrative, and other entries counsel determined were not reasonable. *See* [DE 442-2 ¶ 39].

The hours requested by plaintiffs' counsel are for the most part reasonable. Allen and Snead contend that plaintiffs' counsel unreasonably staffed this case by using thirteen attorneys, relying at least in part on the opinion of Mr. Cooper that, for example, the trial in this matter could have been effectively conducted by four attorneys and a paralegal and that attendance at pretrial hearings and conferences by five attorneys was unnecessary because two attorneys could have handled

those matters. [DE 450-1 ¶¶ 49; 52].[4] They further contend that the hours expended primarily by associate attorneys were often excessive, that too much time was spent in internal meetings, and that reductions in time should be imposed for redacted and vaguely described entries, administrative and clerical tasks, getting up to speed, and block billing.

First, Mr. Cooper does not appear to have any experience litigating complex civil rights cases such as this, so his opinion about the reasonableness of staffing or the hours spent on tasks is limited at best. *See Est. of Najera v. Cty. of Los Angeles*, No. CV1203167DMGMRWX, 2013 WL 12314507, at *2 (C.D. Cal. June 19, 2013) (giving limited weight to Mr. Cooper's attorney fee opinion in a § 1983 action due to his inexperience with this type of litigation). Mr. Cooper's declaration also contains inaccuracies as identified by plaintiffs. *See, e.g.,* [DE 451-1 ¶ 15]. Second, in light of the particular facts and circumstances of this case, the Court deems the staffing decisions and other billing practices for the most part reasonable.

As to staffing and hearing attendance, the Court begins with the premise that it would be "highly atypical" to overstaff in a § 1983 action in order to raise the fee request as the "payoff is too uncertain, as to both the result and the amount of the fee." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Moreover, case law supports the use of more than ten lawyers for large, complex actions such as this, and the Court is not convinced it was unreasonable to do so here. While thirteen attorneys may represent overstaffing in a garden variety, straightforward case, *see Hairston v. Prince George's Cty.*, No. PJM 09-3431, 2012 U.S. Dist. LEXIS 169804, at *10 (D. Md. Nov. 27, 2012), this case can in no way be described as garden variety or straightforward. Though Allen and Snead contend counsel spent too much time "getting up to speed" and conducting internal meetings, the historical record in this case alone was extensive and, as

---

[4] The Court would note that as local counsel, Mr. Abrams's attendance at these hearings was required unless excused by the Court. Local Civil Rule 83.1(f).

discussed above, plaintiffs' attorneys joined this case after entry of an order on summary judgment which was then before the court of appeals. *See also Kabore v. Anchor Staffing, Inc.*, No. CIV. L-10-3204, 2012 WL 5077636, at *6 (D. Md. Oct. 17, 2012) ("internal meetings among counsel and key support staff are an integral part of developing and maintaining a litigation strategy"). It was not unreasonable for the Hogan Lovells attorneys to utilize their "deep bench," as Mr. Tarlton describes it, to support their prosecution of plaintiffs' claims. [DE 442-4 ¶ 3].

The Court has reviewed plaintiffs' time records and declines to disallow any fees for block billing or vagueness. While plaintiffs have used block billing, the descriptions contained within the entries were sufficient for the Court to engage in its review. *See Supler v. FKAACS, Inc.*, No. 5:11-CV-229-FL, 2013 WL 6713120, at *4 (E.D.N.C. Dec. 19, 2013). Counsel's use of descriptions such as "trial prep" and "attend to correspondence" are further sufficient to permit the Court's review to determine whether the work conducted was appropriate. *Alexander S. By & Through Bowers v. Boyd*, 929 F. Supp. 925, 939 (D.S.C. 1995). Plaintiffs have also made an appropriate number of redactions based upon attorney-client privilege.

While attorney fees are not awarded for clerical work, fees are generally recoverable for paralegal work which would otherwise be performed by the attorney and charged to the client. *Kabore*, 2012 U.S. Dist. LEXIS 149761, at *10 (citing *Hyatt v. Barnhart*, 315 F.3d 239, 255 (4th Cir. 2002)). But a number of the hours requested by Hogan Lovells for paralegal work include tasks such as organization and coordination of materials and creating binders, which are not compensable. *Two Men & a Truck/Int'l, Inc. v. A Mover Inc.*, 128 F. Supp. 3d 919, 929 (E.D. Va. 2015). Accordingly, and because of the use of block billing, the Court will account for these improperly included hours by reducing the requested paralegal fee by 10%, or $33,122.48, from her revised fee request of $331,244.80. [DE 451-1].

9

At bottom, the Court is mindful that, while plaintiffs' counsel must provide sufficient documentation to support their request,

> trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 838 (2011). The Court has considered the hours submitted by the plaintiffs and determines them to be reasonable except as adjusted above. The lodestar is therefore appropriately set in this matter as follows: Hogan Lovells attorneys and paralegal at their requested rates and time but with a 10% reduction for paralegal time for a total of $6,002,433.12 and Cheshire Parker attorney Mr. Abrams at his requested rate and time for a total $224,272.50.

B. Subtraction for unsuccessful claims unrelated to successful ones

No reduction for unsuccessful claims unrelated to successful claims is appropriate in this case, and defendants Allen and Snead do not argue otherwise. *See Hensley*, 461 U.S. at 435. Allen and Snead do argue that the Court should reduce the lodestar calculation for fees submitted relating to claims and litigation not involving these defendants. Defendants seek to disallow fees for work on an ancillary insurance declaratory judgment action to which Allen and Snead are not parties and work related to, among other things, plaintiffs' settlement with the Red Springs and Robeson County defendants as well as plaintiffs' *Monell* claim.

In their reply brief, plaintiffs have removed from their request hours related to the settlement with the Red Springs and Robeson County defendants, public relations, state bar proceedings against plaintiffs' former counsel, and their motion for sanctions against the Robeson County defendants. [DE 451-1 ¶ 25 & 451-2 ¶ 6]. The Court determines that the remaining matters, including the insurance declaratory judgment action, are sufficiently related to plaintiffs' common core of facts or are based on related legal theories such that they are recoverable. *Id.*

10

C. Degree of success

Plaintiffs successfully demonstrated that their constitutional rights were violated by defendants, as is evidenced by the jury's verdict. Defendants Allen and Snead do not suggest that there is a lack of litigation success that would justify a reduction in plaintiffs' attorney fees. *McAfee*, 738 F.3d at 94. The Court will not reduce the requested attorney fee award at this step.

Plaintiffs seek a 10% enhancement of the lodestar amount. An enhancement of the lodestar amount may be appropriate where the lodestar does not sufficiently account for a relevant factor in determining a reasonable fee, such as where there is "superior performance and commitment of resources by plaintiff's counsel." *Perdue*, 559 U.S. at 554. An enhancement should only be applied in "rare and exceptional circumstances." *Id.* at 552 (internal quotation and citation omitted).

The Court declines to award an enhancement in this case. The Court recognizes the superior performance of plaintiffs' counsel and their commitment of resources to this case, which culminated in what may be the highest jury award in a wrongful conviction case to date, but finds that these factors are sufficiently accounted for by the lodestar calculation, in particular the use of out-of-district rates. The hourly rates applied take into account both the lengthy and substantial experience of the Hogan Lovell partners and the experience and credentials of the associate attorneys. *Id.* at 555. The high number of hours determined to be reasonable further accounts for the commitment of resources by both the Hogan Lovells and Cheshire Parker attorneys. In sum, and in light of the strong presumption that the lodestar amount represents a reasonable attorney fee, *McAfee*, 738 F.3d at 88-89, the Court determines that the characteristics of counsel and circumstances of this case are adequately accounted for by the lodestar and it will not award an enhancement.

Accordingly, the Court awards attorney fees of $6,002,433.12 to Hogan Lovells and $224,272.50 to Cheshire Parker.

II. Costs

"[A] prevailing plaintiff is entitled to compensation for reasonable litigation expenses under § 1988" in order to encourage meritorious plaintiffs to bring suits to enforce important congressional policies. *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986). "Reasonable litigation expenses include such expenses as 'secretarial costs, copying, telephone costs and necessary travel.'" *Certain v. Potter*, 330 F. Supp. 2d 576, 591 (M.D.N.C. 2004) (quoting *Trimper v. City of Norfolk, Va.,* 58 F.3d 68, 75 (4th Cir.1995)).

There appears to be no objection to the $95,257.50 in guardian fees for Tarlton Polk, PLLC, based upon 293.1 hours at the rate of $325 per hour. The Court finds this cost to be reasonable and awards Mr. Tarlton the full amount requested. *See Doe v. Kidd*, 656 F. App'x 643, 660 (4th Cir. 2016). The Cheshire Parker firm has not requested costs.

Hogan Lovells seeks $394,154.69 in costs as follows: $14,460.44 for copying and duplication; $5,361.24 for shipping; $7,928.28 for legal research; $25,214.29 in deposition costs; $1,485.06 in court fees; $19,056.67 for travel; $14,225.95 for trial materials; $22,644.68 for consultants, mediation, and focus groups; $220,739.33 for experts; and $65,199.75 in pending costs related to the trial, including $33,228.00 in pending expert fees. Defendants Allen and Snead object to plaintiffs' request for expert witness and private investigator fees.

Some courts in this circuit have awarded expert fees in cases arising under § 1983. *See Cook v. Andrews*, 7 F. Supp. 2d 733, 737 (E.D. Va. 1998); *Coward v. Robinson*,[5] No. 110CV147LMBMSN, 2017 WL 5195868, at *7 (E.D. Va. Nov. 9, 2017). Others have declined to

---

[5] The opposing party did not object to recovery of expert fees in *Coward*.

do so, concluding that, as the plain language of § 1988(c) limits a discretionary award of expert fees to cases brought under §§ 1981 or 1981a, "although expert fees may be recoverable in some civil rights cases, they are not recoverable in section 1983 cases[.]" *Stacy v. Stroud*, 845 F. Supp. 1135, 1146 (S.D.W. Va. 1993); *see also Corral v. Montgomery Cty.*, 91 F. Supp. 3d 702, 721 (D. Md. 2015); *H.D.V. Greektown v. City of Detroit*, No. 06-11282, 2013 U.S. Dist. LEXIS 189542, at *26 (E.D. Mich. May 23, 2013) (collecting cases).

The Court follows *Corral* and *Stacy* and disallows $220,739.33 in expert witness fees and $33,228.00 in pending expert witness fees. "Costs for investigative services are [however] recoverable." *Stacy*, 845 F. Supp. at 1145. Accordingly, the Court allows the requested costs for Blankenship Investigations. The Court has reviewed the remaining costs requested and finds them to be reasonable. The Court awards Hogan Lovells $140,187.36 in costs.

CONCLUSION

Accordingly, for the foregoing reasons, plaintiffs' motion for attorney fees and costs [DE 442] is GRANTED IN PART and DENIED IN PART. Attorney fees and costs are awarded as follows: $6,002,433.12 in attorney fees and $140,187.36 in costs to Hogan Lovells US LLP; $224,272.50 in attorney fees to Cheshire Parker Schneider, PLLC; and $95,257.50 in guardian ad litem fees to Tarlton Polk PLLC.

SO ORDERED, this **5** day of ~~October~~ November 2021.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE